02-10-438-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00438-CV

 

 


 
 
 Gerardo DeLeon
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Thos. S. Byrne, Ltd., f/k/a Thos. S. Byrne, Inc.
 and Unique Staff Leasing I, Ltd., d/b/a Unique Staffing
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

 

FROM THE 141st
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

 

          Appellant
Gerardo DeLeon’s foot was crushed when a forty-thousand-pound aerial boom lift
ran over it while he was working on Montgomery Plaza in Fort Worth.  DeLeon
brought a personal injury suit against the general contractor on the project,
Appellee Thos. S. Byrne, Ltd., f/k/a Thos. S. Byrne, Inc., and against Appellee
Unique Staff Leasing I, Ltd. d/b/a Unique Staffing.[2]
 The trial court granted summary judgment for Appellees Byrne and Unique on all
of DeLeon’s causes of action.  DeLeon perfected this appeal.

II.  Factual
and Procedural Background

          Appellee
Byrne, as the general contractor, had a contract with the owner of the
property, Kimco Montgomery Plaza L.P., concerning the building of Montgomery
Plaza.  Byrne entered into a subcontract with Sparkling Clean for Sparkling
Clean to wash the exterior of the Montgomery Plaza buildings. Sparkling Clean
had a contract with a staff leasing company, Appellee Unique, under which
Unique leased employees to Sparkling Clean.

In
December 2006, Sparkling Clean rented an aerial boom lift and sent three
individuals to Montgomery Plaza—DeLeon, Gray, and Frederrick Carter—to wash the
exterior of the buildings.  Gray operated the boom lift, Carter was the flagman
responsible for watching out for pedestrians and his co-workers, and DeLeon was
responsible for making sure the boom lift did not run over the hose. DeLeon was
injured when the boom lift ran over his foot.  At the time, Carter was not in
the area but had walked around the building to shut off the hydrant. DeLeon
sued Byrne and Unique for negligence and gross negligence.

III.  Summary Judgment Standards
of Review

A.
No-Evidence Summary Judgment

After
an adequate time for discovery, the party without the burden of proof may,
without presenting evidence, move for summary judgment on the ground that there
is no evidence to support an essential element of the nonmovant’s claim or
defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence.  Id.; Timpte Indus., Inc. v.
Gish, 286 S.W.3d 306, 310 (Tex. 2009).  The trial court must grant the
motion unless the nonmovant produces summary judgment evidence that raises a
genuine issue of material fact.  See Tex. R. Civ. P. 166a(i) & cmt.;
Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008).

          When
reviewing a no-evidence summary judgment, we examine the entire record in the
light most favorable to the nonmovant, indulging every reasonable inference and
resolving any doubts against the motion.  Sudan v. Sudan, 199 S.W.3d
291, 292 (Tex. 2006).  We review a no-evidence summary judgment for evidence
that would enable reasonable and fair-minded jurors to differ in their
conclusions.  Hamilton, 249 S.W.3d at 426 (citing City of Keller v.
Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).  We credit evidence favorable to
the nonmovant if reasonable jurors could, and we disregard evidence contrary to
the nonmovant unless reasonable jurors could not.  Timpte Indus., 286
S.W.3d at 310 (quoting Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582
(Tex. 2006)).  If the nonmovant brings forward more than a scintilla of
probative evidence that raises a genuine issue of material fact, then a
no-evidence summary judgment is not proper.  Smith v. O’Donnell, 288
S.W.3d 417, 424 (Tex. 2009); King Ranch, Inc. v. Chapman, 118 S.W.3d
742, 751 (Tex. 2003), cert. denied, 541 U.S. 1030 (2004).

B. 
Traditional Summary Judgment

We
review a summary judgment de novo.  Travelers Ins. Co. v. Joachim, 315
S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light
most favorable to the nonmovant, crediting evidence favorable to the nonmovant
if reasonable jurors could, and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge
every reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).  A defendant who
conclusively negates at least one essential element of a cause of action is
entitled to summary judgment on that claim.  Frost Nat’l Bank v. Fernandez,
315 S.W.3d 494, 508 (Tex. 2010); see Tex. R. Civ. P. 166a(b), (c).  

When
reviewing a summary judgment granted on specific grounds, the appellate court
must consider those grounds expressly ruled on and that the movant preserves
for appellate review that are necessary for final disposition of the appeal.  Cincinnati
Life Ins. Co. v. Cates, 927 S.W.2d 623, 625–26 (Tex. 1996).  But if a party
preserves the other grounds presented that were not ruled on by the trial
court, a court of appeals may consider, in the interest of judicial economy, those
other grounds that the trial court did not rule on.  Id.

IV.  Summary Judgment
for Byrne

          In
his third issue, DeLeon argues that the trial court erred by granting summary
judgment for Byrne.  Byrne moved for traditional summary judgment, arguing that
it owed no duty to DeLeon because it did not control the manner, means, and
details of the work done by Sparkling Clean as a subcontractor and that,
regarding DeLeon’s claim that Byrne was negligent in hiring Sparkling Clean, a
general contractor cannot be liable to an independent contractor’s employee for
negligent hiring.  The trial court granted summary judgment for Byrne and
dismissed the case against it.

A. 
Duty—Control of the Independent Contractor’s Work Required

Generally,
a general contractor does not have a duty to see that a subcontractor performs
work in a safe manner.  Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d
778, 783 (Tex. 2001); Redinger v. Living, Inc., 689 S.W.2d 415, 418
(Tex. 1985).  However, a limited duty arises if a general contractor retains
control over the manner in which the independent contractor’s work is
performed.  Lee Lewis Constr., Inc., 70 S.W.3d at 793; Koch Refining
Co. v. Chapa, 11 S.W.3d 153, 154 (Tex. 1999).  The general contractor’s
“duty of reasonable care is commensurate with the control it retains” over the
subcontractor.  Hoechst–Celanese Corp. v. Mendez, 967 S.W.2d 354, 355
(Tex. 1998).  The general contractor must retain the right to control the
means, methods, or details of the independent contractor’s work, “‘the control
must relate to the injury the negligence causes, and the contract must grant
the contractor at least the power to direct the order in which work is to be
done.’”  Dow Chem. Co. v. Bright, 89 S.W.3d 602, 606 (Tex. 2002) (quoting
Elliott–Williams Co. v. Diaz, 9 S.W.3d 801, 804 (Tex. 1999)) (citations
omitted); see also Mendez, 967 S.W.2d at 357 (requiring “nexus” between
retained supervisory control and condition or activity that caused injury).

Section
414 of the Restatement (Second) of Torts, which the Texas Supreme Court adopted
in Redinger, further explains this principle:

One who entrusts work
to an independent contractor, but who retains the control of any part of the
work, is subject to liability for physical harm to others for whose safety the
employer owes a duty to exercise reasonable care, which is caused by his
failure to exercise his control with reasonable care.

689
S.W.2d at 418 (quoting Restatement (Second) of Torts § 414 (1977)).  The
comments to section 414 further explain:

In order for the rule
stated in this Section to apply, the employer must have retained at least some
degree of control over the manner in which the work is done.  It is not enough
that he has merely a general right to order the work stopped or resumed, to
inspect its progress or to receive reports, to make suggestions or
recommendations which need not necessarily be followed, or to prescribe
alterations and deviations.  Such a general right is usually reserved to
employers, but it does not mean that the contractor is controlled as to his
methods of work, or as to operative detail.  There must be such a retention of
a right of supervision that the contractor is not entirely free to do the work
in his own way.

Mendez,
967 S.W.2d 354, 356 (Tex. 1998) (quoting Restatement (Second) of Torts § 414
cmt. c (1965)).  An employer who is aware that its contractor routinely ignores
applicable federal guidelines and standard company policies related to safety
may owe a duty to require that corrective measures be taken or to cancel the
contract.  Id. (citing Tovar v. Amarillo Oil Co., 692 S.W.2d 469,
470 (Tex. 1985)).  And an employer who gives on-site orders or provides
detailed instructions on the means or methods to carry out a work order owes
the independent-contractor employee a duty of reasonable care to protect him
from work-related hazards.  Id. at 357 (citing Redinger, 689
S.W.2d at 418). 

Control
can be established in two ways: by (1) a contractual right of control, or (2)
an exercise of actual control.  Bright, 89 S.W.3d at 606; Lee Lewis Constr.,
Inc., 70 S.W.3d at 783.  The distinction is important because determining
what a contract says is generally a question of law for the court, while
determining whether someone exercised actual control is a generally a question
of fact for the jury.  Lee Lewis Constr., Inc., 70 S.W.3d at 783.

Here,
DeLeon argues that Byrne retained both actual and contractual control over
Sparkling Clean.  

B.
Contractual Control Over Sparkling Clean’s Work

A
contract may impose control upon a party, thereby creating a duty of care.  Bright,
89 S.W.3d at 606; Elliott-Williams Co., 9 S.W.3d at 804.  “If the right
of control over work details has a contractual basis, the circumstance that no
actual control was exercised will not absolve the general contractor of liability.”
 Elliott–Williams Co., 9 S.W.3d at 804.  It is the contractual right of
control, and not the actual exercise of control, that gives rise to a duty to
see that an independent contractor performs work in a safe manner.  Bright,
89 S.W.3d at 606; Elliott–Williams Co., 9 S.W.3d at 804.  

Here,
the subcontract between Byrne and Sparkling Clean provided that Sparkling Clean
was an independent contractor, responsible for and with control over “all
construction means, methods, techniques, procedures, supervision, and/or
coordination of the Subcontract Work including any means, methods, techniques,
procedures, supervision, and/or coordination related to the safety of
Subcontractor’s employees or any other persons working in the area of the
Subcontract Work.”

Despite
this language, DeLeon points to several provisions in the Byrne-Sparkling Clean
subcontract as evidence that Byrne retained contractual control over Sparkling
Clean.[3] 
The subcontract required Sparkling Clean to comply with a number of safety regulations
and to have a safety program in place.  For example, a document titled
“Sub-Contractor Safety Responsibility and Program on Thos. S. Byrne, Ltd.
Projects,” attached to and made a part of the Byrne-Sparkling Clean subcontract,
requires that all subcontractors “have this own [sic] safety program” and lists
seven things that the program should include.  However, requiring Sparkling
Clean to comply with safety regulations and rules did not impose on Byrne, as a
general contractor, a duty to the employees of Sparkling Clean, an independent
contractor, to control job-site safety.  See Shell Oil Co. v. Khan, 138
S.W.3d 288, 293–94 (Tex. 2004) (“[A] contract requiring independent contractors
to comply with general safety practices and train their employees to do so
cannot constitute a right to control job-site safety.”); Bright, 89
S.W.3d at 607 (holding that contract requiring independent contractors of
general contractor to comply with safety rules and regulations promulgated by general
contractor did not impose any duty on general contractor to independent
contractor’s employees); Bell v. VPSI, Inc., 205 S.W.3d 706, 720 (Tex.
App.—Fort Worth 2006, no pet.) (holding employer of independent contractor
retained no contractual control when contract required compliance with employer’s
safety practices and applicable law); Andrews v. DT Const., Inc., 205
S.W.3d 4, 12–13 (Tex. App.—Eastland 2006, no pet.) (“Requiring its
subcontractors to have their employees learn and follow general safety
procedures subjected [the general contractor] to only a narrow duty to make
certain that its safety requirements and procedures did not unreasonably
increase the probability and severity of injury.”).

Paragraph
5.01 of the Byrne-Sparkling Clean subcontract allowed Byrne to order Sparkling
Clean to make changes in the Subcontract Work, including additions, deletions,
or other revisions.  Paragraphs 10.01 and 10.02 required that Sparkling Clean
maintain a qualified person approved by Byrne on the job at all times and
instructed that Byrne shall “[n]ot issue or give any instructions, orders or
directions directly to employees or workmen of the Subcontractor other than
the person[s] supervising or directing the Subcontract Work.”  [Emphasis
added.]  But Byrne’s ability to prescribe alterations and deviations in
Sparkling Clean’s work did not equate to Byrne retaining contractual control
over Sparkling Clean’s methods of work.  See Mendez, 967 S.W.2d at
356; Restatement (Second) of Torts § 414 cmt. c.  Similarly, Byrne’s ability to
give instructions to the supervisor for Sparkling Clean did not give Byrne the right
to control the means, methods, or details of Sparkling Clean’s work; general
contractors have the right to ensure the work is performed according to
contract specifications.  See Victoria Elec. Coop., Inc v. Williams, 100
S.W.3d 323, 329 (Tex. App.—San Antonio 2002, pet. denied).

However,
paragraph 8.01 specifies,

Should
[Sparkling Clean] fail at any time to supply a sufficient number of properly
skilled workmen and/or sufficient materials and equipment of the proper
quality, as determined by [Byrne] in its sole discretion, or fail in any
respect to prosecute the Subcontract Work with promptness and diligence, or
fail to promptly correct defective Work or fail in the performance of any of
the agreements herein contained, [Byrne] may, at its option without notice,
provide such labor, materials and equipment and deduct the cost thereof,
together with all loss or damage occasioned thereby, from any money then due or
thereafter to become due to [Sparkling Clean] under this Agreement.  

This
provision gave Byrne more than just the right to approve or reject the number
of Sparkling Clean’s workers or the type of materials and equipment it used.  See
Abarca v. Scott Morgan Residential, Inc., 305 S.W.3d 110, 127 (Tex.
App.—Houston [1st Dist.] 2009, pet. denied) (holding that general contractor
retained contractual right to control scaffolding that ultimately caused
injuries to subcontractor’s employees because contract provided that general
contractor was responsible for providing scaffolding); cf. Victoria Elec.
Coop., Inc., 100 S.W.3d at 329 (holding that contract provision allowing
owner right to decide what equipment subcontractor used in transporting utility
poles was not evidence of contractual control because it referred to owner’s
“right to inspect and approve the work on the [p]roject, which is a right any
general contractor has to ensure the work is performed according to contract
specifications”).   Instead, Byrne, at its discretion, could substitute labor,
materials, and equipment for those of Sparkling Clean if Byrne determined them
insufficient; this provision essentially gave Byrne the right and discretion to
control the means, methods, and details of Sparkling Clean’s work to the extent
that Sparkling Clean was not entirely free to do its work in its own way.  See
Restatement (Second) of Torts § 414 cmt. c.

          Moreover,
Byrne’s specific right to control the number of workers under paragraph 8.01
was related to the activity that caused DeLeon’s injury.  See Bright,
89 S.W.3d at 606; Elliott–Williams Co., 9 S.W.3d at 804.  Byrne’s
project engineer for Montgomery Plaza, Scott Salyer, testified that Byrne
required four people to operate a boom lift—the operator, two flagmen, and someone
to handle the hoses—and that, during a meeting with Purselley, Salyer informed
him of that requirement.  Yet Sparkling Clean had only three workers on the job
when DeLeon was injured.  Byrne had the contractual right to control the “‘operative
detail’” of the number of workers on the job and to provide—pursuant to paragraph
8.01 of the contract—an additional worker to meet its own requirement of four
workers.  Mendez, 967 S.W.2d at 356 (quoting Restatement (Second) of
Torts § 414 cmt. c).

We
hold that Byrne retained a contractual right to control at its “sole
discretion” the number of workmen, the skill of the workmen, the quality and
quantity of the materials used, as well as the promptness and diligence of
Sparkling Clean’s work and that, consequently and as a matter of law, Byrne
retained control over Sparkling Clean’s work.  This contractually-retained
control related to the activity that caused DeLeon’s injury.  Accordingly, we hold
that the trial court erred by granting Byrne’s summary judgment motion on
DeLeon’s negligence cause of action.  We sustain this portion of DeLeon’s third
issue.[4] 

C. 
Negligent Hiring

An
employer who hires an independent contractor may be held responsible for his
acts if the employer “‘knew or should have known that the contractor was
incompetent and a third person is injured because of such incompetency.’”  McClure
v. Denham, 162 S.W.3d 346, 354 (Tex. App.—Fort Worth 2005, no pet.)
(quoting Tex. Am. Bank v. Boggess, 673 S.W.2d 398, 400 (Tex. App.—Fort
Worth 1984, writ dism’d)).  In other words, an employer has a duty to use
ordinary care in hiring an independent contractor.  Id.; Ross v. Tex.
One P’ship, 796 S.W.2d 206, 216 (Tex. App.—Dallas 1990), writ denied,
806 S.W.2d 222 (Tex. 1991).  Courts have held that an employee of an
independent contractor, however, cannot be considered a third party to whom
such a duty is owed.  See, e.g., McClure, 162 S.W.3d at 354; Hagins
v. E–Z Mart Stores, Inc., 128 S.W.3d 383, 393 (Tex. App.—Texarkana 2004, no
pet.).

Here,
DeLeon cites the Texas Supreme Court’s decision in Pollard v. Missouri Pac.
R.R., 759 S.W.2d 670 (Tex. 1988), as support for his position that he may
maintain a negligent hiring cause of action against Byrne.  In McClure,
this court addressed the applicability of Pollard to negligent hiring
cases:

Pollard sued Missouri
Pacific Railroad Company (MOPAC) after he was injured while he was an employee
of Balch, an independent contractor retained by MOPAC.  The Texas Supreme Court
held that the court of appeals applied the wrong standard in upholding the
trial court’s grant of summary judgment in favor of MOPAC.  The court held that
the evidence showed that MOPAC retained the right of control over Balch’s work,
thereby giving rise to a duty of care.  In remanding the case to the trial
court, the court noted that Pollard had also asserted a negligent hiring claim,
which was not controverted by MOPAC’s motion for summary judgment or addressed
by the court of appeals. 

 

Thus, Pollard
did not directly address the issue of whether an employee of an independent
contractor can bring a negligent hiring claim against the person who hires the
independent contractor. Rather, the court, after holding that MOPAC’s
contractual retention of control over Pollard’s employer gave rise to a duty of
care, noted that Pollard’s negligent hiring claim presented another fact issue
because the claim had not been addressed by the court of appeals or
controverted by MOPAC’s summary judgment motion.

 

We will join our
sister courts in Dallas and Texarkana in holding that appellant, as an employee
of an independent contractor, could not bring a negligent hiring claim against
the Denhams, the persons who hired the independent contractor.  Therefore, the
trial court did not err in granting the Denhams’ motion for summary judgment on
appellant’s negligent hiring claims.  

See McClure, 162 S.W.3d at 355
(citation omitted). 

 

In
accordance with our holding in McClure, we hold here that the
trial court did not err by granting summary judgment for Byrne on DeLeon’s
negligent hiring claim.  See id.  We overrule the remainder of DeLeon’s
third issue.  

V.  Summary Judgment
for Unique

          In
his fifth issue, DeLeon argues that the trial court erred by granting summary
judgment for Unique.  He argues that evidence exists to show that Gray and
DeLeon were employees of Unique, that Unique breached a duty owed to its
employees by not conducting safety inspections, safety orientation, or
training, and that Unique was negligent in its training and supervision of its
employees and is vicariously liable for Gray’s and Purselley’s actions.  DeLeon
also argues that “[t]he issue of whether DeLeon is or was an employee of Unique
is not dispositive to the issue of whether Unique is liable to him for
damages.”

Unique
moved for both no-evidence and traditional summary judgment.[5]
 In the order granting summary judgment for Unique, the trial court specified
that it was granting the motion “on only the limited issue of whether the work
being performed by . . . Deleon and . . . Sparkling Clean . . .and . . . Gray
on the occasion in question was outside the scope of the contract between Sparking
Clean and . . . Unique.”  Because the trial court granted summary judgment on this
limited ground, we must address whether summary judgment was proper on this
ground.  See Cates, 927 S.W.2d at 625–26 (explaining that
appellate courts must consider specific grounds expressly ruled on in summary
judgment).

A.  The
April Contract Controls

          The
summary judgment record contains two contracts between Sparkling Clean and
Unique, one dated March 4, 2003, and another dated April 1, 2003.  In order to
determine whether the trial court’s specific summary judgment, which was based
on the contract between Sparkling Clean and Unique, was proper, we must first
address DeLeon’s argument that a fact issue exists regarding which contract
controlled.  Both contracts are signed by Purselley for Sparkling Clean and by
a representative of Unique; the April contract contains an integration clause
stating that it supersedes all previous contracts.[6]

At
the December 2008 deposition of Garry Bradford, president and CEO of Unique, he
was shown the March contract and agreed that it governed the relationship
between Unique and Sparkling Clean; the April contract was not mentioned or presented
at this deposition.[7]  However, Unique attached
to its February 17, 2010 motion for summary judgment the April contract and an
affidavit of Bradford, in which he averred that the April contract was
controlling.

DeLeon
argues that a genuine issue of material fact exists regarding which contract
between Sparkling Clean and Unique controls because Bradford’s deposition
testimony—that the March contract governed the agreement between the
parties—conflicts with his affidavit statement that the April contract
controls.  DeLeon cites Randall v. Dallas Power & Light Co., 752
S.W.2d 4, 5 (Tex. 1988), for the proposition that a fact issue exists when conflicting
inferences may be drawn from a deposition and from an affidavit made by the
same person and filed in a summary judgment proceeding.  But conflicting
inferences cannot be drawn here because the contracts speak for themselves. 
The subsequent April contract states that it supersedes all previous contracts,
both contracts are signed by Purselley for Sparking Clean and by a
representative of Unique, and DeLeon has not presented any evidence that the
April contract is invalid.[8] 
Thus, the April contract is the governing agreement between the parties.

Pursuant
to the controlling April contract, Sparkling Clean’s employees became
co-employees of Unique as follows: 

The
existing employees of [Sparkling Clean] in Texas listed in the New Client Sign
Up Form shall become co-employees of Unique on the effective date of this
Agreement as set forth above.  [Sparkling Clean] expressly agrees and
understands that no individual shall become an employee in Texas and be
entitled to any of the services provided under this Agreement unless the
individual has, prior to commencing employment, completed Unique’s employment
application, W-4 withholding form, and Form I-9, all of which must be delivered
to and accepted by Unique prior to employment. . . .  [Sparkling Clean] should
not consider any individual to be an employee of Unique for purposes of the
payment of wages or employment taxes or coverage by workers’ compensation
insurance, medical insurance or any other employee benefit or service until
Unique notifies [Sparkling Clean] by e-mail or facsimile of Unique’s acceptance
of employment of such individual.  

The
contract provides that Unique is responsible for payment of wages, tax
withholdings and reporting, workers’ compensation, and employee benefits for
employees assigned to Sparkling Clean by Unique.  Under the contract, Unique
also shares with Sparkling Clean “the right of direction and control over
employees assigned to [Sparkling Clean]’s work sites,” “the right to hire,
fire, discipline, and reassign assigned employees,” and “the right of direction
and control over the adoption of employment and safety policies and the management
of workers’ compensation claims, claim filings and related procedures.”[9] 
See Tex. Lab. Code Ann. § 91.032(a)(1), (4), (5) (West 2006) (requiring
that contracts between staff leasing company and client provide that staff
leasing company shares with its client “the right of direction and control”
over and “the right to hire, fire, discipline, and reassign” assigned employees
and “the right of direction and control over the adoption of employment and
safety policies and the management of workers’ compensation claims, claim
filings, and related procedures”).  However, the contract states, 

[I]f [Sparkling
Clean] shall make payments of any type to the employees contrary to this
Agreement, [Sparkling Clean] alone shall be responsible for all taxes, reporting
requirements and other liabilities with respect to those payments and the work
performed by employees for such payments shall be deemed solely for the benefit
of [Sparkling Clean] and outside the scope of employee’s employment with Unique
. . . . 

 

The
trial court’s specific summary judgment for Unique was based on this provision.


B.  A Genuine Issue
of Material Fact Exists on Whether Gray was an Employee of and Paid by Unique

 

          To
determine whether the trial court properly granted summary judgment for Unique
on the basis that the work performed by Sparkling Clean, DeLeon, and Gray on
the Montgomery Plaza project was outside the scope of the contract between
Sparking Clean and Unique, we must first determine whether evidence exists to
raise a factual dispute regarding whether Gray or DeLeon were employees of
Unique at that time and whether Sparkling Clean paid them directly for their
work on the Montgomery Plaza project.  

DeLeon’s
summary judgment evidence includes transcripts from Purselley’s and Gray’s
depositions and an affidavit of DeLeon.  Purselley testified at his deposition that
Gray was paid by Unique for his work on the Montgomery Plaza project for the
day that DeLeon was injured and that Sparkling Clean never paid Gray personally
for work he did for Sparkling Clean.  Purselley also testified that Unique paid
employees for work done for Sparkling Clean regardless of whether they had an
application form on file as required under the contract;[10]
Purselley would simply call Unique, tell the company to pay a certain employee
for a certain number of hours, and Unique would pay the employee.  Purselley
testified at an earlier deposition that DeLeon was the only person that Sparkling
Clean hired directly, that DeLeon was a day laborer, and that Sparkling Clean paid
his wages directly.  Gray testified at his deposition that he had continuously
worked for Sparkling Clean from 2001 until after the Montgomery Plaza job in
2006, and that he received his paychecks from Unique.  W-2 forms for Gray from
2003 and 2006, showing Unique as his employer, were attached to his deposition
testimony.

          Examining
the record in the light most favorable to DeLeon, as the nonmovant, indulging
every reasonable inference and resolving any doubts against the motion, nothing
in the record raises a fact issue that DeLeon was employed by Unique; instead,
the evidence demonstrates that he was a day laborer hired and paid directly by
Purselley.  See Tex. R. Civ. P. 166a(i) & cmt.; Sudan, 199
S.W.3d at 292.  Thus, no evidence exists that Unique owed any duty to DeLeon as
an employee of Unique.

However,
that does not end our inquiry.  The contract provision at issue—the one upon
which the trial court based its specific summary judgment—provides that if
Sparkling Clean paid an employee contrary to the agreement, then the
work performed by that employee for such payment shall be outside
the scope of the employee’s employment.  It does not state that all work
performed by any employee on a given project is outside the scope of the contract
if Sparkling Clean pays one employee directly for his work on that project.  In
other words, here, if Gray was acting as Unique’s employee and paid by Unique when
DeLeon was injured, the contract provision at issue would not apply to make
Gray’s work outside the scope of employment with Unique.  Examining the record
in the light most favorable to DeLeon, he brought forth more than a scintilla
of evidence to raise a genuine issue of material fact that Gray was an employee
of Unique and paid by Unique for work he did on the Montgomery Plaza project on
the day that DeLeon was injured.  See Tex. R. Civ. P. 166a(i) &
cmt.; Sudan, 199 S.W.3d at 292.  Purselley’s and Gray’s deposition
testimony—that Unique paid Gray for his work on the Montgomery Plaza project
for the day that DeLeon was injured and that Sparkling Clean never paid Gray
personally for work he did for Sparkling Clean—is some evidence raising a fact
issue.  Thus, we hold that the trial court erred by granting summary judgment
on the limited ground that the work performed by Sparkling Clean and Gray was
outside the scope of the contract between Sparkling Clean and Unique.  Because
summary judgment was granted on only this limited basis, we decline to consider
the remaining grounds for summary judgment that the trial court did not
consider.  See Cincinnati Life Ins. Co., 927 S.W.2d at 626; Delaney
v. Univ. of Houston, 835 S.W.2d 56, 58, 61 (Tex. 1992) (declining to
address legal arguments on which the trial court did not base summary
judgment); Pilgrim Enters., Inc. v. Md. Cas. Co., 24 S.W.3d 488, 499
(Tex. App.—Houston [1st Dist.] 2000, no pet.) (same).  We sustain DeLeon’s
fifth issue.

VI.  Conclusion

Having
overruled DeLeon’s fourth issue and part of his third issue, we affirm the
trial court’s summary judgment for Byrne on DeLeon’s negligent hiring claim.  Having
sustained part of his third issue and sustained his fifth issue, and having
held that the trial court erred by granting summary judgment for Byrne on
DeLeon’s negligence claim and for Unique on the limited ground that the work
performed by Sparkling Clean and Gray was outside the scope of the contract
between Sparkling Clean and Unique, we reverse the trial court’s judgments on
those grounds and remand this case to the trial court for further proceedings
consistent with this opinion.[11]


 

SUE WALKER
JUSTICE

 

PANEL: 
WALKER,
MEIER, and GABRIEL, JJ.

 

DELIVERED:  January 5, 2012









[1]See Tex. R. App. P. 47.4.





[2]DeLeon also brought suit
against the subcontractor who had employed him, Jimmy Don Purselley,
Individually and d/b/a Sparkling Clean Pressure Wash (Sparkling Clean), and
against the operator of the boom lift, Shawn “Pete” Gray, but DeLeon
subsequently nonsuited them without prejudice.





[3]DeLeon also points to the
Kimco-Byrne contract as evidence that Byrne exercised control over Sparkling
Clean.  The Byrne-Sparkling Clean subcontract made all documents reflecting the
agreement between Kimco, as the owner of Montgomery Plaza, and Byrne, as the
contractor for the project, part of the Byrne-Sparkling Clean subcontract.  DeLeon
points to the following provision in the Kimco-Byrne contract to argue that
Sparkling Clean’s employees were considered Byrne’s employees:

In all relations with respect to Work between the
subcontractors and Owner [Kimco], the subcontractors and their employees shall
be considered as employees of Contractor [Byrne].  Nothing contained in this
Contract shall create any contractual relations between a subcontractor and
Owner [Kimco].  Contractor [Byrne] shall be responsible to Owner [Kimco] for
Contractor’s [Byrne’s] subcontractors . . . .  

However, the Byrne-Sparkling Clean
subcontract provided that if there was a conflict between the terms of the
Kimco-Byrne contract and the Byrne-Sparkling Clean subcontract, then the terms
of the Byrne-Sparkling Clean subcontract controlled.  The subcontract stated
that Sparkling Clean was an independent contractor, and this provision controls
the relationship between Byrne and Sparkling Clean here.  

 





[4]Having found as a matter
of law that Byrne retained contractual control precluding summary judgment, we
need not address whether a fact issue exists showing that Byrne retained actual
control over Sparkling Clean’s work.  See Tex. R. App. P. 47.1; see
also Bright, 89 S.W.3d at 606 (explaining that if the right of control over
work details has a contractual basis, the circumstance that no actual control
was exercised will not absolve the general contractor of liability). 





[5]The majority of Unique’s
summary judgment grounds were alleged as no-evidence grounds; its only argument
for traditional summary judgment was the affirmative defense of worker’s
compensation.  However, regarding its no-evidence claims, Unique pointed to
evidence attached to its motion to support those claims.  This does not transform
the motion into a traditional summary-judgment motion, and we will consider
that evidence only if it creates a fact question.  See Binur v. Jacobo,
135 S.W.3d 646, 651 (Tex. 2004).





[6]The two contracts are
different in several respects.  For example, the March contract states that the
leasing arrangement between the parties applies to all existing employees of
Sparkling Clean and any new employees hired by Sparkling Clean, whereas the
April contract states that new employees hired by Sparkling Clean become
co-employees of Unique only by filling out an employment application and other
documents for Unique.





[7]Unique also presented the
March contract in its responses to subpoena duces tecum as the document
reflecting the contractual relationship between it and Sparkling Clean on the date
that DeLeon was injured. 





[8]Similarly, DeLeon’s
argument—in his fourth issue—that Bradford’s affidavit should be stricken
because he did not explain the change in his testimony also fails.  Cf. Farroux
v. Denny’s Restaurants, Inc., 962 S.W.2d 108, 111 (Tex. App.—Houston [1st
Dist.] 1997, no pet.) (refusing to consider plaintiff’s affidavit that
contradicted plaintiff’s deposition testimony because “[w]ithout an explanation
of the change in the testimony, we assume the sole purpose of the affidavit was
to avoid summary judgment”).  Thus, we overrule DeLeon’s fourth issue.





[9]The contract also
provides, 

As part of Unique’s shared right of direction and
control over the management of safety, risk and hazard control involving
assigned employees performing work at [Sparking Clean’s] work site, Unique
retains the right to perform safety inspections of [Sparkling Clean’s]
equipment and premises and to promulgate and administer employment and safety
practices.  However, liability for employee safety is a responsibility of
[Sparkling Clean], who controls the work site and its business operations. 





[10]Carter and Gray filled
out applications for employment with Unique the day after DeLeon’s accident.





[11]We need not address
DeLeon’s second issue in which he argues that the trial court erred by granting
summary judgment for Byrne and Unique because he was entitled to a spoliation
presumption.  See Tex. R. App. P. 47.1.  Similarly, we need not address
DeLeon’s first issue in which he argues that the trial court erred by denying
his motion for continuance and for additional discovery regarding Unique’s
motion for summary judgment.

On appeal, DeLeon moved to strike portions of Unique’s
statement of facts in its brief to this court; we carried the motion with the
case.  We deny DeLeon’s motion and note that we have not considered any factual
assertions not supported by the record.  See Marshall v. Hous. Auth. of San
Antonio, 198 S.W.3d 782, 789 (Tex. 2006).