

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00438-CV

GERARDO DELEON

APPELLANT

V.

THOS. S. BYRNE, LTD., F/K/A
THOS. S. BYRNE, INC. AND
UNIQUE STAFF LEASING I, LTD.,
D/B/A UNIQUE STAFFING

APPELLEES

----------

## FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Gerardo DeLeon's foot was crushed when a forty-thousand-pound aerial boom lift ran over it while he was working on Montgomery Plaza in Fort Worth. DeLeon brought a personal injury suit against the general contractor

---

[1]See Tex. R. App. P. 47.4.

on the project, Appellee Thos. S. Byrne, Ltd., f/k/a Thos. S. Byrne, Inc., and against Appellee Unique Staff Leasing I, Ltd. d/b/a Unique Staffing.[2] The trial court granted summary judgment for Appellees Byrne and Unique on all of DeLeon's causes of action. DeLeon perfected this appeal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellee Byrne, as the general contractor, had a contract with the owner of the property, Kimco Montgomery Plaza L.P., concerning the building of Montgomery Plaza. Byrne entered into a subcontract with Sparkling Clean for Sparkling Clean to wash the exterior of the Montgomery Plaza buildings. Sparkling Clean had a contract with a staff leasing company, Appellee Unique, under which Unique leased employees to Sparkling Clean.

In December 2006, Sparkling Clean rented an aerial boom lift and sent three individuals to Montgomery Plaza—DeLeon, Gray, and Frederrick Carter—to wash the exterior of the buildings. Gray operated the boom lift, Carter was the flagman responsible for watching out for pedestrians and his co-workers, and DeLeon was responsible for making sure the boom lift did not run over the hose. DeLeon was injured when the boom lift ran over his foot. At the time, Carter was not in the area but had walked around the building to shut off the hydrant. DeLeon sued Byrne and Unique for negligence and gross negligence.

---

[2]DeLeon also brought suit against the subcontractor who had employed him, Jimmy Don Purselley, Individually and d/b/a Sparkling Clean Pressure Wash (Sparkling Clean), and against the operator of the boom lift, Shawn "Pete" Gray, but DeLeon subsequently nonsuited them without prejudice.

2

### III. SUMMARY JUDGMENT STANDARDS OF REVIEW

### A. No-Evidence Summary Judgment

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises

3

a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

## B. Traditional Summary Judgment

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

When reviewing a summary judgment granted on specific grounds, the appellate court must consider those grounds expressly ruled on and that the movant preserves for appellate review that are necessary for final disposition of the appeal. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625–26 (Tex. 1996). But if a party preserves the other grounds presented that were not ruled

on by the trial court, a court of appeals may consider, in the interest of judicial economy, those other grounds that the trial court did not rule on. *Id.*

## IV. SUMMARY JUDGMENT FOR BYRNE

In his third issue, DeLeon argues that the trial court erred by granting summary judgment for Byrne. Byrne moved for traditional summary judgment, arguing that it owed no duty to DeLeon because it did not control the manner, means, and details of the work done by Sparkling Clean as a subcontractor and that, regarding DeLeon's claim that Byrne was negligent in hiring Sparkling Clean, a general contractor cannot be liable to an independent contractor's employee for negligent hiring. The trial court granted summary judgment for Byrne and dismissed the case against it.

### A. Duty—Control of the Independent Contractor's Work Required

Generally, a general contractor does not have a duty to see that a subcontractor performs work in a safe manner. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985). However, a limited duty arises if a general contractor retains control over the manner in which the independent contractor's work is performed. *Lee Lewis Constr., Inc.*, 70 S.W.3d at 793; *Koch Refining Co. v. Chapa*, 11 S.W.3d 153, 154 (Tex. 1999). The general contractor's "duty of reasonable care is commensurate with the control it retains" over the subcontractor. *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354, 355 (Tex. 1998). The general contractor must retain the right to control the means,

5

methods, or details of the independent contractor's work, "'the control must relate to the injury the negligence causes, and the contract must grant the contractor at least the power to direct the order in which work is to be done.'" *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002) (quoting *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 804 (Tex. 1999)) (citations omitted); *see also Mendez*, 967 S.W.2d at 357 (requiring "nexus" between retained supervisory control and condition or activity that caused injury).

Section 414 of the Restatement (Second) of Torts, which the Texas Supreme Court adopted in *Redinger*, further explains this principle:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

689 S.W.2d at 418 (quoting Restatement (Second) of Torts § 414 (1977)). The comments to section 414 further explain:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Mendez*, 967 S.W.2d 354, 356 (Tex. 1998) (quoting Restatement (Second) of Torts § 414 cmt. c (1965)). An employer who is aware that its contractor

routinely ignores applicable federal guidelines and standard company policies related to safety may owe a duty to require that corrective measures be taken or to cancel the contract. *Id.* (citing *Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469, 470 (Tex. 1985)). And an employer who gives on-site orders or provides detailed instructions on the means or methods to carry out a work order owes the independent-contractor employee a duty of reasonable care to protect him from work-related hazards. *Id.* at 357 (citing *Redinger*, 689 S.W.2d at 418).

Control can be established in two ways: by (1) a contractual right of control, or (2) an exercise of actual control. *Bright*, 89 S.W.3d at 606; *Lee Lewis Constr., Inc.*, 70 S.W.3d at 783. The distinction is important because determining what a contract says is generally a question of law for the court, while determining whether someone exercised actual control is a generally a question of fact for the jury. *Lee Lewis Constr., Inc.*, 70 S.W.3d at 783.

Here, DeLeon argues that Byrne retained both actual and contractual control over Sparkling Clean.

### B. Contractual Control Over Sparkling Clean's Work

A contract may impose control upon a party, thereby creating a duty of care. *Bright*, 89 S.W.3d at 606; *Elliott-Williams Co.*, 9 S.W.3d at 804. "If the right of control over work details has a contractual basis, the circumstance that no actual control was exercised will not absolve the general contractor of liability." *Elliott–Williams Co.*, 9 S.W.3d at 804. It is the contractual right of control, and not the actual exercise of control, that gives rise to a duty to see that an

7

independent contractor performs work in a safe manner. *Bright*, 89 S.W.3d at 606; *Elliott–Williams Co.*, 9 S.W.3d at 804.

Here, the subcontract between Byrne and Sparkling Clean provided that Sparkling Clean was an independent contractor, responsible for and with control over "all construction means, methods, techniques, procedures, supervision, and/or coordination of the Subcontract Work including any means, methods, techniques, procedures, supervision, and/or coordination related to the safety of Subcontractor's employees or any other persons working in the area of the Subcontract Work."

Despite this language, DeLeon points to several provisions in the Byrne-Sparkling Clean subcontract as evidence that Byrne retained contractual control over Sparkling Clean.[3] The subcontract required Sparkling Clean to comply with

_____

[3]DeLeon also points to the Kimco-Byrne contract as evidence that Byrne exercised control over Sparkling Clean. The Byrne-Sparkling Clean subcontract made all documents reflecting the agreement between Kimco, as the owner of Montgomery Plaza, and Byrne, as the contractor for the project, part of the Byrne-Sparkling Clean subcontract. DeLeon points to the following provision in the Kimco-Byrne contract to argue that Sparkling Clean's employees were considered Byrne's employees:

> In all relations with respect to Work between the subcontractors and Owner [Kimco], the subcontractors and their employees shall be considered as employees of Contractor [Byrne]. Nothing contained in this Contract shall create any contractual relations between a subcontractor and Owner [Kimco]. Contractor [Byrne] shall be responsible to Owner [Kimco] for Contractor's [Byrne's] subcontractors . . . .

However, the Byrne-Sparkling Clean subcontract provided that if there was a conflict between the terms of the Kimco-Byrne contract and the Byrne-Sparkling

a number of safety regulations and to have a safety program in place. For example, a document titled "Sub-Contractor Safety Responsibility and Program on Thos. S. Byrne, Ltd. Projects," attached to and made a part of the Byrne-Sparkling Clean subcontract, requires that all subcontractors "have this own [sic] safety program" and lists seven things that the program should include. However, requiring Sparkling Clean to comply with safety regulations and rules did not impose on Byrne, as a general contractor, a duty to the employees of Sparkling Clean, an independent contractor, to control job-site safety. *See Shell Oil Co. v. Khan*, 138 S.W.3d 288, 293–94 (Tex. 2004) ("[A] contract requiring independent contractors to comply with general safety practices and train their employees to do so cannot constitute a right to control job-site safety."); *Bright*, 89 S.W.3d at 607 (holding that contract requiring independent contractors of general contractor to comply with safety rules and regulations promulgated by general contractor did not impose any duty on general contractor to independent contractor's employees); *Bell v. VPSI, Inc.*, 205 S.W.3d 706, 720 (Tex. App.—Fort Worth 2006, no pet.) (holding employer of independent contractor retained no contractual control when contract required compliance with employer's safety practices and applicable law); *Andrews v. DT Const., Inc.*, 205 S.W.3d 4, 12–13

---

Clean subcontract, then the terms of the Byrne-Sparkling Clean subcontract controlled. The subcontract stated that Sparkling Clean was an independent contractor, and this provision controls the relationship between Byrne and Sparkling Clean here.

(Tex. App.—Eastland 2006, no pet.) ("Requiring its subcontractors to have their employees learn and follow general safety procedures subjected [the general contractor] to only a narrow duty to make certain that its safety requirements and procedures did not unreasonably increase the probability and severity of injury.").

Paragraph 5.01 of the Byrne-Sparkling Clean subcontract allowed Byrne to order Sparkling Clean to make changes in the Subcontract Work, including additions, deletions, or other revisions. Paragraphs 10.01 and 10.02 required that Sparkling Clean maintain a qualified person approved by Byrne on the job at all times and instructed that Byrne shall "[n]ot issue or give any instructions, orders or directions directly to employees or workmen of the Subcontractor *other than the person[s] supervising or directing the Subcontract Work*." [Emphasis added.] But Byrne's ability to prescribe alterations and deviations in Sparkling Clean's work did not equate to Byrne retaining contractual control over Sparkling Clean's methods of work. *See Mendez*, 967 S.W.2d at 356; Restatement (Second) of Torts § 414 cmt. c. Similarly, Byrne's ability to give instructions to the supervisor for Sparkling Clean did not give Byrne the right to control the means, methods, or details of Sparkling Clean's work; general contractors have the right to ensure the work is performed according to contract specifications. *See Victoria Elec. Coop., Inc v. Williams*, 100 S.W.3d 323, 329 (Tex. App.—San Antonio 2002, pet. denied).

However, paragraph 8.01 specifies,

> Should [Sparkling Clean] fail at any time to supply a sufficient number of properly skilled workmen and/or sufficient materials and equipment of the proper quality, as determined by [Byrne] in its sole discretion, or fail in any respect to prosecute the Subcontract Work with promptness and diligence, or fail to promptly correct defective Work or fail in the performance of any of the agreements herein contained, [Byrne] may, at its option without notice, provide such labor, materials and equipment and deduct the cost thereof, together with all loss or damage occasioned thereby, from any money then due or thereafter to become due to [Sparkling Clean] under this Agreement.

This provision gave Byrne more than just the right to approve or reject the number of Sparkling Clean's workers or the type of materials and equipment it used. *See Abarca v. Scott Morgan Residential, Inc.*, 305 S.W.3d 110, 127 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (holding that general contractor retained contractual right to control scaffolding that ultimately caused injuries to subcontractor's employees because contract provided that general contractor was responsible for providing scaffolding); *cf. Victoria Elec. Coop., Inc.*, 100 S.W.3d at 329 (holding that contract provision allowing owner right to decide what equipment subcontractor used in transporting utility poles was not evidence of contractual control because it referred to owner's "right to inspect and approve the work on the [p]roject, which is a right any general contractor has to ensure the work is performed according to contract specifications"). Instead, Byrne, at its discretion, could substitute labor, materials, and equipment for those of Sparkling Clean if Byrne determined them insufficient; this provision essentially gave Byrne the right and discretion to control the means, methods, and details of

11

Sparkling Clean's work to the extent that Sparkling Clean was not entirely free to do its work in its own way. *See* Restatement (Second) of Torts § 414 cmt. c.

Moreover, Byrne's specific right to control the number of workers under paragraph 8.01 was related to the activity that caused DeLeon's injury. *See Bright*, 89 S.W.3d at 606; *Elliott–Williams Co.*, 9 S.W.3d at 804. Byrne's project engineer for Montgomery Plaza, Scott Salyer, testified that Byrne required four people to operate a boom lift—the operator, two flagmen, and someone to handle the hoses—and that, during a meeting with Purselley, Salyer informed him of that requirement. Yet Sparkling Clean had only three workers on the job when DeLeon was injured. Byrne had the contractual right to control the "'operative detail'" of the number of workers on the job and to provide—pursuant to paragraph 8.01 of the contract—an additional worker to meet its own requirement of four workers. *Mendez*, 967 S.W.2d at 356 (quoting Restatement (Second) of Torts § 414 cmt. c).

We hold that Byrne retained a contractual right to control at its "sole discretion" the number of workmen, the skill of the workmen, the quality and quantity of the materials used, as well as the promptness and diligence of Sparkling Clean's work and that, consequently and as a matter of law, Byrne retained control over Sparkling Clean's work. This contractually-retained control related to the activity that caused DeLeon's injury. Accordingly, we hold that the

12

trial court erred by granting Byrne's summary judgment motion on DeLeon's negligence cause of action. We sustain this portion of DeLeon's third issue.[4]

## C.  Negligent Hiring

An employer who hires an independent contractor may be held responsible for his acts if the employer "'knew or should have known that the contractor was incompetent and a third person is injured because of such incompetency.'" *McClure v. Denham*, 162 S.W.3d 346, 354 (Tex. App.—Fort Worth 2005, no pet.) (quoting *Tex. Am. Bank v. Boggess*, 673 S.W.2d 398, 400 (Tex. App.—Fort Worth 1984, writ dism'd)).  In other words, an employer has a duty to use ordinary care in hiring an independent contractor. *Id.*; *Ross v. Tex. One P'ship*, 796 S.W.2d 206, 216 (Tex. App.—Dallas 1990), *writ denied*, 806 S.W.2d 222 (Tex. 1991).  Courts have held that an employee of an independent contractor, however, cannot be considered a third party to whom such a duty is owed.  *See, e.g.*, *McClure*, 162 S.W.3d at 354; *Hagins v. E–Z Mart Stores, Inc.*, 128 S.W.3d 383, 393 (Tex. App.—Texarkana 2004, no pet.).

Here, DeLeon cites the Texas Supreme Court's decision in *Pollard v. Missouri Pac. R.R.*, 759 S.W.2d 670 (Tex. 1988), as support for his position that

---

[4]Having found as a matter of law that Byrne retained contractual control precluding summary judgment, we need not address whether a fact issue exists showing that Byrne retained actual control over Sparkling Clean's work.  *See* Tex. R. App. P. 47.1; *see also Bright*, 89 S.W.3d at 606 (explaining that if the right of control over work details has a contractual basis, the circumstance that no actual control was exercised will not absolve the general contractor of liability).

13

he may maintain a negligent hiring cause of action against Byrne. In *McClure*, this court addressed the applicability of *Pollard* to negligent hiring cases:

> Pollard sued Missouri Pacific Railroad Company (MOPAC) after he was injured while he was an employee of Balch, an independent contractor retained by MOPAC. The Texas Supreme Court held that the court of appeals applied the wrong standard in upholding the trial court's grant of summary judgment in favor of MOPAC. The court held that the evidence showed that MOPAC retained the right of control over Balch's work, thereby giving rise to a duty of care. In remanding the case to the trial court, the court noted that Pollard had also asserted a negligent hiring claim, which was not controverted by MOPAC's motion for summary judgment or addressed by the court of appeals.
>
> Thus, *Pollard* did not directly address the issue of whether an employee of an independent contractor can bring a negligent hiring claim against the person who hires the independent contractor. Rather, the court, after holding that MOPAC's contractual retention of control over Pollard's employer gave rise to a duty of care, noted that Pollard's negligent hiring claim presented another fact issue because the claim had not been addressed by the court of appeals or controverted by MOPAC's summary judgment motion.
>
> We will join our sister courts in Dallas and Texarkana in holding that appellant, as an employee of an independent contractor, could not bring a negligent hiring claim against the Denhams, the persons who hired the independent contractor. Therefore, the trial court did not err in granting the Denhams' motion for summary judgment on appellant's negligent hiring claims.

*See McClure*, 162 S.W.3d at 355 (citation omitted).

In accordance with our holding in *McClure*, we hold here that the trial court did not err by granting summary judgment for Byrne on DeLeon's negligent hiring claim. *See id.* We overrule the remainder of DeLeon's third issue.

### V. SUMMARY JUDGMENT FOR UNIQUE

14

In his fifth issue, DeLeon argues that the trial court erred by granting summary judgment for Unique. He argues that evidence exists to show that Gray and DeLeon were employees of Unique, that Unique breached a duty owed to its employees by not conducting safety inspections, safety orientation, or training, and that Unique was negligent in its training and supervision of its employees and is vicariously liable for Gray's and Purselley's actions. DeLeon also argues that "[t]he issue of whether DeLeon is or was an employee of Unique is not dispositive to the issue of whether Unique is liable to him for damages."

Unique moved for both no-evidence and traditional summary judgment.[5] In the order granting summary judgment for Unique, the trial court specified that it was granting the motion "on only the limited issue of whether the work being performed by . . . Deleon and . . . Sparkling Clean . . .and . . . Gray on the occasion in question was outside the scope of the contract between Sparking Clean and . . . Unique." Because the trial court granted summary judgment on this limited ground, we must address whether summary judgment was proper on this ground. *See Cates*, 927 S.W.2d at 625–26 (explaining that appellate courts must consider specific grounds expressly ruled on in summary judgment).

---

[5]The majority of Unique's summary judgment grounds were alleged as no-evidence grounds; its only argument for traditional summary judgment was the affirmative defense of worker's compensation. However, regarding its no-evidence claims, Unique pointed to evidence attached to its motion to support those claims. This does not transform the motion into a traditional summary-judgment motion, and we will consider that evidence only if it creates a fact question. *See Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004).

15

## A. The April Contract Controls

The summary judgment record contains two contracts between Sparkling Clean and Unique, one dated March 4, 2003, and another dated April 1, 2003. In order to determine whether the trial court's specific summary judgment, which was based on the contract between Sparkling Clean and Unique, was proper, we must first address DeLeon's argument that a fact issue exists regarding which contract controlled. Both contracts are signed by Purselley for Sparkling Clean and by a representative of Unique; the April contract contains an integration clause stating that it supersedes all previous contracts.[6]

At the December 2008 deposition of Garry Bradford, president and CEO of Unique, he was shown the March contract and agreed that it governed the relationship between Unique and Sparkling Clean; the April contract was not mentioned or presented at this deposition.[7] However, Unique attached to its February 17, 2010 motion for summary judgment the April contract and an affidavit of Bradford, in which he averred that the April contract was controlling.

---

[6]The two contracts are different in several respects. For example, the March contract states that the leasing arrangement between the parties applies to all existing employees of Sparkling Clean and any new employees hired by Sparkling Clean, whereas the April contract states that new employees hired by Sparkling Clean become co-employees of Unique only by filling out an employment application and other documents for Unique.

[7]Unique also presented the March contract in its responses to subpoena duces tecum as the document reflecting the contractual relationship between it and Sparkling Clean on the date that DeLeon was injured.

16

DeLeon argues that a genuine issue of material fact exists regarding which contract between Sparkling Clean and Unique controls because Bradford's deposition testimony—that the March contract governed the agreement between the parties—conflicts with his affidavit statement that the April contract controls. DeLeon cites *Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4, 5 (Tex. 1988), for the proposition that a fact issue exists when conflicting inferences may be drawn from a deposition and from an affidavit made by the same person and filed in a summary judgment proceeding. But conflicting inferences cannot be drawn here because the contracts speak for themselves. The subsequent April contract states that it supersedes all previous contracts, both contracts are signed by Purselley for Sparking Clean and by a representative of Unique, and DeLeon has not presented any evidence that the April contract is invalid.[8] Thus, the April contract is the governing agreement between the parties.

Pursuant to the controlling April contract, Sparkling Clean's employees became co-employees of Unique as follows:

> The existing employees of [Sparkling Clean] in Texas listed in the New Client Sign Up Form shall become co-employees of Unique on the effective date of this Agreement as set forth above.

---

[8]Similarly, DeLeon's argument—in his fourth issue—that Bradford's affidavit should be stricken because he did not explain the change in his testimony also fails. *Cf. Farroux v. Denny's Restaurants, Inc.*, 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (refusing to consider plaintiff's affidavit that contradicted plaintiff's deposition testimony because "[w]ithout an explanation of the change in the testimony, we assume the sole purpose of the affidavit was to avoid summary judgment"). Thus, we overrule DeLeon's fourth issue.

[Sparkling Clean] expressly agrees and understands that no individual shall become an employee in Texas and be entitled to any of the services provided under this Agreement unless the individual has, prior to commencing employment, completed Unique's employment application, W-4 withholding form, and Form I-9, all of which must be delivered to and accepted by Unique prior to employment. . . . [Sparkling Clean] should not consider any individual to be an employee of Unique for purposes of the payment of wages or employment taxes or coverage by workers' compensation insurance, medical insurance or any other employee benefit or service until Unique notifies [Sparkling Clean] by e-mail or facsimile of Unique's acceptance of employment of such individual.

The contract provides that Unique is responsible for payment of wages, tax withholdings and reporting, workers' compensation, and employee benefits for employees assigned to Sparkling Clean by Unique. Under the contract, Unique also shares with Sparkling Clean "the right of direction and control over employees assigned to [Sparkling Clean]'s work sites," "the right to hire, fire, discipline, and reassign assigned employees," and "the right of direction and control over the adoption of employment and safety policies and the management of workers' compensation claims, claim filings and related procedures."[9] *See* Tex. Lab. Code Ann. § 91.032(a)(1), (4), (5) (West 2006)

---

[9]The contract also provides,

> As part of Unique's shared right of direction and control over the management of safety, risk and hazard control involving assigned employees performing work at [Sparking Clean's] work site, Unique retains the right to perform safety inspections of [Sparkling Clean's] equipment and premises and to promulgate and administer employment and safety practices. However, liability for employee safety is a responsibility of [Sparkling Clean], who controls the work site and its business operations.

(requiring that contracts between staff leasing company and client provide that staff leasing company shares with its client "the right of direction and control" over and "the right to hire, fire, discipline, and reassign" assigned employees and "the right of direction and control over the adoption of employment and safety policies and the management of workers' compensation claims, claim filings, and related procedures").  However, the contract states,

> [I]f [Sparkling Clean] shall make payments of any type to the employees contrary to this Agreement, [Sparkling Clean] alone shall be responsible for all taxes, reporting requirements and other liabilities with respect to those payments and the work performed by employees for such payments shall be deemed solely for the benefit of [Sparkling Clean] and outside the scope of employee's employment with Unique . . . .

The trial court's specific summary judgment for Unique was based on this provision.

## B.  A Genuine Issue of Material Fact Exists on Whether Gray was an Employee of and Paid by Unique

To determine whether the trial court properly granted summary judgment for Unique on the basis that the work performed by Sparkling Clean, DeLeon, and Gray on the Montgomery Plaza project was outside the scope of the contract between Sparking Clean and Unique, we must first determine whether evidence exists to raise a factual dispute regarding whether Gray or DeLeon were employees of Unique at that time and whether Sparkling Clean paid them directly for their work on the Montgomery Plaza project.

19

DeLeon's summary judgment evidence includes transcripts from Purselley's and Gray's depositions and an affidavit of DeLeon. Purselley testified at his deposition that Gray was paid by Unique for his work on the Montgomery Plaza project for the day that DeLeon was injured and that Sparkling Clean never paid Gray personally for work he did for Sparkling Clean. Purselley also testified that Unique paid employees for work done for Sparkling Clean regardless of whether they had an application form on file as required under the contract;[10] Purselley would simply call Unique, tell the company to pay a certain employee for a certain number of hours, and Unique would pay the employee. Purselley testified at an earlier deposition that DeLeon was the only person that Sparkling Clean hired directly, that DeLeon was a day laborer, and that Sparkling Clean paid his wages directly. Gray testified at his deposition that he had continuously worked for Sparkling Clean from 2001 until after the Montgomery Plaza job in 2006, and that he received his paychecks from Unique. W-2 forms for Gray from 2003 and 2006, showing Unique as his employer, were attached to his deposition testimony.

Examining the record in the light most favorable to DeLeon, as the nonmovant, indulging every reasonable inference and resolving any doubts against the motion, nothing in the record raises a fact issue that DeLeon was employed by Unique; instead, the evidence demonstrates that he was a day

_____

[10]Carter and Gray filled out applications for employment with Unique the day after DeLeon's accident.

laborer hired and paid directly by Purselley. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Sudan*, 199 S.W.3d at 292. Thus, no evidence exists that Unique owed any duty to DeLeon as an employee of Unique.

However, that does not end our inquiry. The contract provision at issue—the one upon which the trial court based its specific summary judgment—provides that if Sparkling Clean *paid an employee* contrary to the agreement, then *the work performed by that employee* for such payment shall be outside the scope of the employee's employment. It does not state that all work performed by any employee on a given project is outside the scope of the contract if Sparkling Clean pays one employee directly for his work on that project. In other words, here, if Gray was acting as Unique's employee and paid by Unique when DeLeon was injured, the contract provision at issue would not apply to make Gray's work outside the scope of employment with Unique. Examining the record in the light most favorable to DeLeon, he brought forth more than a scintilla of evidence to raise a genuine issue of material fact that Gray was an employee of Unique and paid by Unique for work he did on the Montgomery Plaza project on the day that DeLeon was injured. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Sudan*, 199 S.W.3d at 292. Purselley's and Gray's deposition testimony—that Unique paid Gray for his work on the Montgomery Plaza project for the day that DeLeon was injured and that Sparkling Clean never paid Gray personally for work he did for Sparkling Clean—is some evidence raising a fact issue. Thus, we hold that the trial court erred by granting summary judgment on the limited

21

ground that the work performed by Sparkling Clean and Gray was outside the scope of the contract between Sparkling Clean and Unique. Because summary judgment was granted on only this limited basis, we decline to consider the remaining grounds for summary judgment that the trial court did not consider. *See Cincinnati Life Ins. Co.*, 927 S.W.2d at 626; *Delaney v. Univ. of Houston*, 835 S.W.2d 56, 58, 61 (Tex. 1992) (declining to address legal arguments on which the trial court did not base summary judgment); *Pilgrim Enters., Inc. v. Md. Cas. Co.*, 24 S.W.3d 488, 499 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (same). We sustain DeLeon's fifth issue.

## VI. CONCLUSION

Having overruled DeLeon's fourth issue and part of his third issue, we affirm the trial court's summary judgment for Byrne on DeLeon's negligent hiring claim. Having sustained part of his third issue and sustained his fifth issue, and having held that the trial court erred by granting summary judgment for Byrne on DeLeon's negligence claim and for Unique on the limited ground that the work performed by Sparkling Clean and Gray was outside the scope of the contract between Sparkling Clean and Unique, we reverse the trial court's judgments on those grounds and remand this case to the trial court for further proceedings consistent with this opinion.[11]

---

[11]We need not address DeLeon's second issue in which he argues that the trial court erred by granting summary judgment for Byrne and Unique because he was entitled to a spoliation presumption. *See* Tex. R. App. P. 47.1. Similarly, we need not address DeLeon's first issue in which he argues that the trial court erred

SUE WALKER
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DELIVERED:  January 5, 2012

---

by denying his motion for continuance and for additional discovery regarding Unique's motion for summary judgment.

On appeal, DeLeon moved to strike portions of Unique's statement of facts in its brief to this court; we carried the motion with the case.  We deny DeLeon's motion and note that we have not considered any factual assertions not supported by the record.  *See Marshall v. Hous. Auth. of San Antonio*, 198 S.W.3d 782, 789 (Tex. 2006).