**VICTORIA ELECTRIC COOPERATIVE, INC.,**
Appellant,

v.

**Barbara O. WILLIAMS, Individually and as Representative of the Estate of Elvin Ray Williams; Brian Williams; and Brandon R. Williams, Appellees.**

No. 04-00-00222-CV.

Court of Appeals of Texas, San Antonio.

Nov. 27, 2002.

Rehearing Overruled Jan. 15, 2003.

---

Jennifer Parker Ainsworth, Linda K. McCloud, W. Curt Webb, Beck, Redden & Secrest, L.L.P., Houston, John W. Petry, Petry & Gonzalez, Carrizo Springs, for appellant.

Jacqueline M. Stroh, Thomas H. Crofts, Jr., Sharon E. Callaway, Crofts & Callaway, P.C., San Antonio, Roberto Serna, Law Offices of Roberto Serna, Crystal City, Bernard T. Klimist, Michael A. Johnson, Law Offices of Bernard T. Klimist, Victoria, for appellees.

Panel: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

### OPINION ON APPELLEES' MOTION FOR EN BANC RECONSIDERATION

Opinion by: PAUL W. GREEN, Justice.

We grant the Motion for En Banc Reconsideration filed by Barbara O. Williams, Individually and as Representative of the Estate of Elvin Ray Williams, Brian Williams, and Brandon R. Williams. We withdraw our opinion of April 3, 2002 and substitute this opinion in its place:

Victoria Electric Cooperative, Inc. appeals a judgment finding it liable for negligence in the transportation of utility poles by its independent contractor. Because we hold there is no evidence demonstrating Victoria Electric retained a right to control the activity leading to the injury and because the trial court erred in holding Victoria Electric vicariously liable for the negligence of its independent contractor, we reverse the trial court's ruling and render judgment in favor of Victoria Electric.

### Background

Victoria Electric is a rural electric cooperative operating under a statutorily authorized franchise granted by the City of Victoria "to construct, maintain, and operate [ ] electric light and power lines, with all necessary or desirable appurtenances (including underground conduits, poles, towers, wires, and transmission lines, and telegraph and telephone wires for its own use) for the purpose of supplying electricity [ ] within the City limits of the City of Victoria, Texas." In carrying out its franchise obligations, Victoria Electric entered into a contract with Urban Electrical Services, Inc. to construct and maintain electrical distribution lines in the franchise area.

The evening before the accident, Urban employees loaded six utility poles onto a truck and trailer. The next morning, before sunrise, one of Urban's employees, Troy Allen Baze, drove the truck and trailer onto a public highway for the trip to the installation location. The utility poles extended beyond the end of the trailer and, although the trailer was equipped with proper marker lights, some warning devices required to be affixed to extended loads were not attached. As Baze attempted to cross a highway at an intersection, a vehicle driven by Elvin Ray Williams struck one of the poles extending past the end of the trailer. Williams was killed.

Williams's survivors ("Williams") brought this wrongful death action against Victoria Electric, Urban, and Baze. Before trial, Williams settled her claims against Urban and Baze for $2 million. At trial, the jury found actual damages in the amount of $5.016 million and assigned responsibility fifty percent to Victoria Electric, twenty-five percent to Urban, and twenty-five percent to Baze. After applying the settlement credit, the trial court

awarded judgment against Victoria Electric for the remaining balance by imputing Urban's and Baze's negligence to Victoria Electric. The trial court found: (1) Victoria Electric retained the right to control Urban's activities; (2) Victoria Electric had a non-delegable duty of care under the "peculiar risk" and "inherently dangerous activity" exceptions; and (3) Victoria Electric had a non-delegable duty of care under the franchise exception.[1]

### Right to Control

The trial court found Victoria Electric negligently failed to exercise its right to control the activities of Urban and Baze as required by section 414 of the Restatement of Torts. On appeal, Victoria Electric claims the evidence is insufficient to support Williams's section 414 negligence claim. We must determine whether Victoria Electric retained a right to control Urban's activities such that a duty of care arose. If a duty of care arose, we must determine whether a breach of that duty of care led to Williams's injuries.

#### A. Section 414 Duty of Care

■ Section 414, adopted by the supreme court in 1985, provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS § 414 (1977); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985). This rule applies where the employer retains less control than would subject him to liability as a master. *Redinger*, 689 S.W.2d at 418. In 1998, the supreme court expounded on independent contractor liability, explaining that an employer's duty of care arises under section 414 only when the retained right of control is more than general or supervisory. *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex.1998) (per curiam). Specifically, the retained right of control must extend to the "operative detail" of the contractor's work so that the contractor is not free to do the work in its own way. *Id.* The comments to section 414 further discuss the degree of control needed to create a duty:

> It is not enough that [the general contractor] has merely a general right to order the work stopped or resumed, to inspect its progress or receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965)); *see Mendez*, 967 S.W.2d at 356.

■ A duty arising under section 414 is commensurate with the degree of control retained by the employer. *See Elliott–Williams Co., Inc. v. Diaz*, 9 S.W.3d 801, 803 (Tex.1999). The employer "must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability." *See Koch Ref. Co. v. Chapa*, 11

---

1. The trial court made a separate finding that Victoria Electric admitted it had not delegat-
ed its contractual duties to Urban and Baze.

S.W.3d 153, 156 (Tex.1999) (per curiam). Further, we must remember that liability results only when the right of control relates to the injury-producing activity itself. *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex.1997). As such, an employer is not liable for the negligence of an independent contractor unless the employer retains the right of control, or exercises actual control, over the condition or activity that causes the injury. *Id.*

Here, the "condition or activity" causing Williams's death was the transportation of utility poles in the dark, without any warning lights, on a trailer that was too short in violation of both the Texas Transportation Code and provisions in Victoria Electric's safety manual. In this case, it is not contended that Victoria Electric was exercising *actual control* over Urban's employees at the time of the alleged negligent act. Therefore, we must first determine whether there is evidence demonstrating Victoria Electric retained a contractual right of control over the "means, methods, or details" used by Urban in transporting utility poles from Victoria Electric's yard to the construction site. *See Diaz*, 9 S.W.3d at 804.

**B. *Contractual Provisions Relating to Victoria Electric's Right to Control***

◼ The contract in question is a U.S. Department of Agriculture Rural Utilities Services printed form contract entitled "Distribution Line Extension Construction Contract (Labor Only)." It is in the form of a "proposal" from the contractor (Urban) to "the Owner" (Victoria Electric) which, upon being signed, constituted the contract between the parties. In the contract, Urban agrees to construct electrical supply line-extensions ("the Project") in accordance with specified plans and at times when sections of the project are certified as ready for construction by Victoria Electric.

Two main parts of the contract contain language relevant to the right to control issue: Article II and Article IV. In Article II, the section regarding "Supervision and Inspection" [2] provides:

a. The Contractor shall cause the construction work on the Project to receive constant supervision by a competent superintendent (hereinafter called the "Superintendent") who shall be present at all times during working hours where construction is being carried on. The Contractor shall also employ, in connection with the construction of the Project, capable, experienced, and reliable foremen and such skilled workmen as may be required for the various classes of work to be performed. Directions and instructions given to the Superintendent by the Owner shall be binding upon the Contractor.[3]

b. The Owner reserves the right to require the removal from the Project of any employee of the Contractor if in the judgment of the Owner such removal shall be necessary in order to protect the interest of the Owner. The Owner shall have the right to require the Contractor to increase the number of his

---

**2.** Article II, which is labeled "Construction," has six sections: (1) Time and Manner of Work; (2) Changes in Plans, Specifications and Drawings; (3) Supervision and Inspection; (4) Defective Workmanship; (5) Materials; and (6) Term of Contract.

**3.** This last sentence has nothing to do with right of control. Rather, it is intended to clarify that when Victoria Electric gives directions or instructions to the Superintendent in the course of monitoring the work under the contract, that communication is equivalent to giving the instructions directly to Urban.

employees and to increase or change the amount or kind of tools and equipment if at any time the progress of the work shall be unsatisfactory to the Owner; but the failure of the Owner to give any such directions shall not relieve the Contractor of his obligations to complete the work within the time and in the manner specified in this Proposal.

c. The manner of performance of the work, and all equipment used therein, shall be subject to the inspection, tests, and approval of the Owner. The Owner shall have the right to inspect all payrolls and other data and records of the Contractor relevant to the work. The Contractor will provide all reasonable facilities necessary for such inspection and tests. The Contractor shall have an authorized agent accompany the inspector when final inspection is made and, if requested by the Owner, when any other inspection is made.

Article IV's section on "Protection to Persons and Property"[4] provides:

The Contractor shall at all times take all reasonable precautions for the safety of employees on the work and of the public, and shall comply with all applicable provisions of Federal, State, and Municipal safety laws and building and construction codes, as well as the safety rules and regulations of the Owner. All machinery and equipment and other physical hazards shall be guarded in accordance with the "Manual of Accident Prevention in Construction" of the Associated General Contractors of America unless such instructions are incompatible with Federal, State, or Municipal laws or regulations.

The quoted provisions of the contract show Victoria Electric retained some right of control over the activities of Urban; however, we must determine whether the right to control was supervisory in nature, which does not trigger liability, or specifically controlling the details of Urban's work, which does trigger liability.

## C. Was Victoria Electric's right to control supervisory?

Victoria Electric's right of control extended to ensuring that Urban performed the work in accordance with the construction specifications and applicable safety laws. In reviewing the contractual language, we see the scope of authority retained does not implicate a right to control the operative details of how Urban did its work or to deny Urban the ability to do the work in its own way. In other words, the control was broadly supervisory. Although Victoria Electric did reserve the right to order corrections if the work was not being done safely, Victoria Electric's right to require Urban to operate safely is not evidence of control over the "details of what was being done" so as to impose liability. See Mendez, 967 S.W.2d at 356 (employer who required contractor to train its employees in safety measures not liable to employee who was injured because of a violation of those safety measures).

Further, for liability to exist, there has to be a nexus between the employer's retained control and the condition or activity that caused the injury. Id. at 357. As noted, the activity causing Williams's death was the violation of state transportation safety laws. Although Victoria Electric may have had a narrow duty of care to others arising under Section 414 to ensure that Urban was performing its work safely, the scope of its duty was limited to the scope of its retained control. In this case,

---

4. Article IV, which is labeled "Particular Undertakings of the Contractor," has four sections: (1) Protection to Persons and Property, (2) Insurance, (3) Bond, and (4) Delivery of Possession and Control to the Owner.

the scope of the duty was supervisory, and was limited to ensuring Urban's overall compliance with the contract. The scope of the duty did not extend to control over the details of how utility poles are to be transported.

### D. *Lee Lewis Constr., Inc. v. Harrison*

In *Lee Lewis Construction, Inc. v. Harrison,* the supreme court upheld a finding that a general contractor, LLC, was liable for the death of an independent contractor's employee, who fell from a ten-story building when his safety support system failed. *Lee Lewis Construction, Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex.2001). In upholding the liability finding, the supreme court focused on the evidence showing that LLC assigned a superintendent "the responsibility to routinely inspect the ninth and tenth floor addition to the south tower to see to it that the subcontractors and their employees properly utilized fall protection equipment." Further, the supreme court noted the evidence demonstrating the superintendent personally witnessed and approved of the specific fall-protections systems used by the independent contractor.

Relying on the following language in the contract at issue, Williams argues this case is controlled by *Lee Lewis Construction:*

> The Owner shall have the right to require the Contractor to increase the number of his employees and to increase or change the amount or kind of tools and equipment if at anytime the progress of the work shall be unsatisfactory to the Owner.
>
> The manner of performance of the work, and all equipment used therein, shall be subject to the inspection, tests, and approval of the Owner.

Williams argues Victoria Electric is liable because it retained the specific right to decide what equipment Urban used in transporting the utility poles.

This argument is unpersuasive for two reasons. First, when the contractual language is considered in context with the remaining text in the paragraph, it is clear that the language refers to Victoria Electric's right to inspect and approve the work on the Project, which is a right any general contractor has to ensure the work is performed according to contract specifications. Second, the facts here are quite different from *Lee Lewis Construction.* The supreme court's decision was based on the fact that LLC exercised actual control over the safety of the premises.[5] Importantly, the case before us is not an actual control case; it is a contractual right of control case.

Interestingly, the concurring justices believed the facts in *Lee Lewis Construction* supported a contractual right of control theory. *Id.* at 787, 800 (Hecht & Jefferson, JJ., concurring). The theory was that LLC contractually retained a right of control over the safety of the premises and thus owed the contractor's employees a duty of care commensurate with the amount of control that was retained. *Id.; see Exxon v. Tidwell,* 867 S.W.2d 19 (Tex. 1993). Because the contract imposed very detailed safety requirements on the contractor and LLC took on the burden of ensuring safety at the work site, the contractor was not free to do the work in its own way. *Id.* at 801 (Jefferson, J., concurring). Further, because "the general contractor also actually knew that the independent subcontractor was using an extremely dangerous device in its work and

---

5. *Id.* at 783–84 (stating "to evaluate LLC's no-evidence challenge we must determine if the Harrisons presented more than a scintilla of evidence that LLC exercised actual control over safety").

did nothing to stop it," there was evidence supporting the liability finding. *Id.* at 789 (Hecht, J., concurring).

In this case, Victoria Electric did not contractually assume the burden of ensuring the safety of the traveling public. The guidelines in Victoria Electric's safety manual, which specify how to transport utility poles, impose no additional safety requirements other than those already mandated by state law. Therefore, Victoria Electric simply required that its contractor abide by all state, local, and federal laws and its own safety rules and regulations.

Victoria Electric also retained the latitude to "inspect, test, and approve" Urban's work to make sure it was complying with contract specifications, as well as safety requirements, without subjecting itself to liability. So long as Victoria Electric determined that Urban was abiding by the safety laws and regulations, Urban was permitted to carry out its work as it saw fit. Therefore, contrary to Williams's argument, this contractual language does not implicate a right to control the details of the independent contractor's work.

### E. *Is there evidence demonstrating Victoria Electric was aware Urban had previously violated safety provisions?*

 Williams also argues Victoria Electric had a duty arising out of its awareness that Urban had previously violated safety regulations and claims a duty arises from this knowledge. Williams relies on the following language of *Mendez:* "an employer who is aware that its contractor routinely ignores applicable federal guidelines and standard company policies related to safety may owe a duty to require corrective measures to be taken or to cancel the contract." *Mendez,* 967 S.W.2d at 357. Thus, if Victoria Electric learned Ur-

ban was violating the safety requirements of the contract and failed to correct it, Victoria Electric could be liable to others injured as a result of that failure to properly supervise. *Id.; Traylor Bros., Inc. v. Garcia,* 49 S.W.3d 430, 435 (Tex.App.-San Antonio 2001, pet. denied) (stating that if a contractor requires a subcontractor to comply with its safety regulations, the contractor owes a narrow duty of care—that is, that its safety requirements and procedures do not unreasonably increase the probability and severity of injury).

There is no proof that this narrow duty of care was breached. The only evidence relied on by Williams that refers to Victoria Electric's knowledge of Urban's previous violations is a general statement made by a Victoria Electric mechanic, who said he had seen Urban haul poles before daylight without lights attached. Williams admitted no evidence demonstrating how many times the mechanic observed the violation, when the violation occurred in reference to the date of the accident, who the violation was reported to, and what resulted from the observed violations.

While it is true there was testimony that some employee of Victoria Electric had seen someone with Urban at some time hauling poles on the wrong size trailer in the dark without lights, there was no evidence that Victoria Electric approved of this conduct or failed to do anything about it if it was ever brought to the attention of someone with authority at Victoria Electric. We decline to hold that the statement is sufficient to demonstrate Victoria Electric was aware that Urban "routinely ignored" safety guidelines and, consequently, had the duty to "require corrective measures be taken." Consequently, there is no support for a breach of the narrow duty of care Victoria Electric owed to the public under the limited control it retained in the contract. Because we hold

the trial court erred in holding that Victoria Electric retained a "contractual right" to control the activities of Urban and Baze, we sustain Victoria Electric's first four issues.

### "Peculiar Risk" & "Inherently Dangerous Activity" Exceptions

■ The trial court found that because the transportation of electrical poles poses a "peculiar risk" and is an "inherently dangerous activity," Victoria Electric has a non-delegable duty of care and is vicariously liable for the negligence of Urban and Baze. Section 416 of the Restatement provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

RESTATEMENT (SECOND) OF TORTS § 416; *see Scott Fetzer Co. v. Read*, 945 S.W.2d 854, 862 (Tex.App.-Austin 1997), *aff'd*, 990 S.W.2d 732 (Tex.1998). Also, if a general contractor fails to take reasonable precautions when the independent contractor's work involves an inherently dangerous activity, it will be held liable for the negligence of the independent contractor. RESTATEMENT (SECOND) OF TORTS § 427. Importantly, despite the applicability of the "peculiar risk" and "inherently dangerous activity" exceptions, the general contractor will not be held vicariously liable for an independent contractor's negligence if: (1) the negligence consists solely in the improper manner in which he does the work; (2) it creates a risk of such harm which is not inherent in or normal to the work; and (3) the employer had no reason to contemplate the negligence when the contract was made. RESTATEMENT (SECOND) ON TORTS § 426; 427 cmt. d.

Considering relevant case law, we decline to hold that the transportation of utility poles is a "peculiarly risky" or "inherently dangerous activity." *Arlen v. The Hearst Corp.*, 4 S.W.3d 326, 328 (Tex. App.-Houston [1st Dist.] 1999, pet. denied) (declining to recognize the "peculiar risk" doctrine); *Burton–Lingo Co. v. Armstrong*, 116 S.W.2d 791, 796 (Tex.Civ.App.-Amarillo 1938, writ ref'd) (stating the hauling of "lumber and material with a motortruck is not intrinsically dangerous"). Further, Victoria Electric could not have reasonably contemplated the new risk created by the actions of Urban and Baze that was not inherent had the poles been transported in the "ordinary or prescribed way." *See* RESTATEMENT (SECOND) ON TORTS § 426; 427. We sustain Victoria Electric's fifth, sixth, and eighth issues.

### Franchise Exception

■ The trial court also held Victoria Electric vicariously liable under the franchise exception found in section 428 of the Restatement. Section 428 provides a general contractor carrying on an activity, "which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others," is liable for the negligence of its independent contractors. RESTATEMENT (SECOND) OF TORTS § 428. The rule in section 428 does not apply to "the carrying on of activities which involve no special danger, and which could be lawfully carried on [ ] by private persons without liability for the misconduct of the contractors to whom they are entrusted." *Id.*

cmt. a. We decline to hold that the transportation of utility poles is an activity that can only be carried out under a franchise. *See Tirres v. El Paso Sand Prods., Inc.,* 808 S.W.2d 672, 678 (Tex.App.-El Paso 1991, writ denied) (holding that oversize load permits are not analogous to franchise permits obtained from the Texas Railroad Commission or the Interstate Commerce Commission because "anyone, not just a common carrier, ... has a right, to obtain a special permit"). As such, the trial court erred in finding Victoria Electric vicariously liable under the franchise exception. We sustain Victoria Electric's eighth issue.

### Conclusion

We hold there is no evidence demonstrating Victoria Electric retained a right to control the activities causing Williams's death. Further, we hold the transportation of utility poles is not a peculiarly risky activity, an inherently dangerous activity, or an activity that may only be lawfully carried out under a franchise. As such, we reverse the judgment of the trial court and render judgment in favor of Victoria Electric on all claims. We need not address Victoria Electric's remaining issues.

Dissenting Opinion by: ALMA L. LÓPEZ, Justice, joined by PHIL HARDBERGER, Chief Justice, and CATHERINE STONE, Justice.

ALMA L. LÓPEZ, Justice, dissenting.

Because the contract between Victoria Electric and Urban contains multiple provisions to support Victoria Electric's retention of the right to control the project, I would hold there was sufficient evidence to support the trial court's determination that Victoria Electric was vicariously liable for Urban's negligence. Therefore, I respectfully dissent from the majority's opinion.

In *Newspapers, Inc. v. Love,* 380 S.W.2d 582 (Tex.1964), the Texas Supreme Court

held that if a right of control over the work has a contractual basis, the fact that no actual control was exercised will not absolve an employer of liability. It is the right of control, not the actual exercise of control, which gives rise to a duty to see that an independent contractor performs work in a safe manner. *Id.* at 590. Otherwise, contract rights and relationships based thereon would be destroyed. *Id.* at 592; *see also Pollard v. Missouri Pacific R.R. Co.,* 759 S.W.2d 670, 670 (Tex.1988). In order to be liable for an independent contractor's acts, a general contractor must have the right to control the means, methods, or details of the independent contractor's work. *See Elliott–Williams Co., Inc. v. Diaz,* 9 S.W.3d 801, 804 (Tex.1999). The construction of the contract as to the right of control is a legal question. *See id.*

Section 414 of the Restatement (Second) of Torts and its comments specifically outline the degree of control necessary to create a duty. As interpreted by the Texas Supreme Court, "this rule[ ] applies when the employer *retains some control* over the manner in which the independent contractor's work is performed, but does not retain the degree of control which would subject him to liability as a master." *See Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985) (emphasis added) (citing RESTATEMENT (SECOND) OF TORTS § 414 (1977)). Comment c of the rule explains, in part, that "[t]he employer must have retained *at least some degree of control* over the manner in which the work is done" in order for the rule to apply. RESTATEMENT (SECOND) OF TORTS § 414, comment c (1977) (emphasis added). The employer's role must be more than a general right to order the work to start or stop, to inspect progress, or receive reports. *Id.* Rather, the rule is applicable where the employer retains:

... the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.

RESTATEMENT (SECOND) OF TORTS § 414, comment a (1977). Accordingly, an employer's control over the operative details results in vicarious liability. *See Malone v. Ellis Timber, Inc.*, 990 S.W.2d 933, 935 (Tex.App.-Beaumont 1999, no pet.) (citing *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex.1998)).

Article II, section 3 of the 1995 Distribution Line Extension Construction Contract regarding the supervision and inspection of construction specifically provides that "the manner of performance of the work ... shall be subject to the inspection, tests, and approval of" Victoria Electric. Under this article, Victoria Electric requires that Urban employ a superintendent to continuously supervise the work being performed and specifically requires that the "[d]irections and instructions given to the superintendent by [Victoria Electric] shall be binding on [Urban]." Victoria Electric has the right to remove any Urban employees from a work site, to increase the number of employees working, and the right to change or increase the amount or kinds of tools and equipment being used. Further, Victoria Electric has the right to inspect Urban's books, payroll, and personnel records. Finally, article IV of the contract regarding protection of persons and property specifically requires Urban to take all reasonable safety precautions for the safety of employees on the job and of the public and requires it to comply with all applicable federal, state, and municipal safety laws as well as Victoria's own safety rules.

On rehearing, the majority concedes that under the contract in question, Victoria Electric retains some right of control over Urban's activities. However, by focusing on only one aspect of the contract (i.e. Urban's adherence to applicable safety rules and regulations), the majority concludes that the right of control is supervisory in nature. The contract specifically provides that Urban will perform the work in accordance with construction specifications and applicable safety laws. The contract expressly references the safety rules and regulations of Victoria Electric. It is undisputed that the safety rules and regulations of Victoria Electric are contained in a safety handbook. The safety handbook contains several provisions regarding the safe and proper method for transporting poles and other materials by truck. The handbook specifically mandates that poles be loaded parallel with the truck length and that they not extend beyond the normal side of the truck. The handbook also requires that warning devices must be attached when material extends more than four feet beyond the front or back of the truck. Finally, the handbook provides that at night and during periods of poor visibility, "red lights shall be used." Under the contract, Victoria Electric reserved the right to order corrections if the work was not being done safely by Urban.

Relying upon *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354 (Tex.1998), the majority remarkably concludes that Victoria Electric's control, as defined under the contract, does not cover the operative details of Urban's work. In *Mendez*, the Texas Supreme Court held that an employer's duty of care is a narrow one when it is based *solely* on a requirement that the

contractor comply with its safety rules. *Mendez*, 967 S.W.2d at 357. In *Mendez*, the contract in question contained a general provision requiring the subcontractor to train its employees in the safety-related rules and regulations of the general contractor, observe federal safety practices and regulations, and take all necessary precautions to keep its work area free from hazards. Contrastingly, in the instant matter, the contract provides more than a general statement that Urban adhere to applicable federal and state safety rules. By referencing Victoria's own rules and regulations, the contract specifically dictates to Urban the proper procedure for transporting poles and, therefore, constitutes evidence of Victoria Electric's control over the "operative detail" of Urban's work.[1] *See Mendez*, 967 S.W.2d at 357.

In addition to controlling Urban's compliance with applicable safety laws and its own safety rules and regulations, the contract expressly provides that Victoria Electric retained the following rights of control: (1) the requirement that materials for construction be obtained from Victoria Electric's warehouse; (2) the time allowed for completion of work and the rate at which construction is to proceed; (3) when weather will be deemed a prohibitive factor in completing the work and when extensions of time to complete work will be granted; (4) to make changes in the work to be done; (5) supervision and inspection of the work; (6) to remove any Urban employee from the project and to require Urban to increase the number of employees or change the amount or kind of tools and equipment being used; (7) to inspect, test, and approve the manner of perfor-

mance of the work and the equipment used for the work; and (8) to require that Urban obtain certificates of insurance, and comply with all applicable statutes, ordinances, rules, and regulations pertaining to the work. Finally, the board resolution by the board of Victoria Electric approving the contract provided that Urban's work would be performed "under the direction of Victoria Electric Cooperative." Accordingly, Victoria Electric's right of control under the contract goes beyond merely controlling Urban's adherence to applicable safety regulations. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 788–89 (Tex.2001) (Hecht, J., concurring) (stating that the retention of control over safety is necessary, but not sufficient to impose liability; rather, more is required).

The right of control can be established one of two ways: by contract or by actual exercise of control. *See Lee Lewis Constr. Inc.*, 70 S.W.3d at 783. After considering the contract as a whole and Victoria Electric's own safety rules and regulations as referenced by the contract, I would hold there was sufficient evidence to establish Victoria Electric vicariously liable for negligence under section 414 of the Restatement (Second) of Torts and affirm the judgment of the trial court.

---

**1.** Interestingly, the majority disposes with Victoria Electric's guidelines on pole transportation by stating the guidelines impose "no additional safety requirements other than those already mandated by state law." This conclusion improperly extends the applicable case law noted above by requiring that Victoria Electric needed to provide its own rules regarding pole transportation over and above that required by state law in order to be vicariously liable.