**AFFIRM; Opinion issued February 21, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-10-00724-CV
_____

**SCOTT POYNOR AND KIMBERLY YVONNE MILES POYNOR, INDIVIDUALLY AND AS NEXT FRIEND OF SPENSER ALEXIS MILES, A MINOR, Appellants**

**V.**

**BMW OF NORTH AMERICA, LLC AND BMW (US) HOLDING CORP., Appellees**

On Appeal from the 116th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 07-05727-F

# OPINION

Before Justices Bridges, FitzGerald, and Lang
Opinion By Justice Bridges

Before the Court is appellants' motion for en banc reconsideration. On the Court's own motion, we withdraw our opinion and vacate our judgment of July 31, 2012. We overrule appellants' motion for en banc reconsideration and affirm the trial court's judgment. This is now the opinion of the Court.

Appellants Scott and Kimberly Poynor, Individually and as Next Friend of Spenser Miles, a Minor, appeal the trial court's grant of summary judgment in favor of appellees BMW of North America, LLC ("BMW NA") and BMW (US) Holding Corp. ("BMW US"). In three issues, appellants contend: (1) the record contains sufficient evidence to raise a fact issue as to negligent

undertaking by BMW NA; (2) the principles of respondeat superior apply to the relationship between BMW NA and Classic BMW despite a contractual provision which states Classic BMW is an independent contractor; and (3) the denial of appellants' motion for continuance was improper. We affirm.

## BACKGROUND

In July of 2005, appellants went to Classic BMW to shop for a new car. Christopher Homer, a salesperson, took appellants for a test drive in a 2006 BMW 325i. Homer explained it was the dealer's policy to have a sales person drive the car first to explain the vehicle's features. During the test drive, Homer drove recklessly and lost control of the vehicle, crashing the car into a traffic sign, guardrail, a retaining wall and pillar.[1] Appellants were injured as a result of the accident.

Appellants filed suit against fourteen defendants.[2] Their third amended petition specifically asserted the following causes of action against BMW NA and BMW US:[3] (1) negligence; (2) negligent hiring, training and supervision; (3) negligence per se; (4) intentional infliction of emotion distress; and (5) respondeat superior, vicarious liability and agency. BMW NA and BMW US filed separate traditional motions for summary judgment, which the trial court granted.

In their brief before this Court, appellants claim BMW NA is directly liable because it

---

[1] The investigating officer found that the accident had been caused by Homer's failure to control his speed and failure to drive in a single lane. Homer later pled guilty to child endangerment and confessed he drove the vehicle at a greater speed than was reasonable and prudent under the existing circumstances, thereby causing him to lose control of the vehicle.

[2] The fourteen defendants included Homer, Classic BMW, individuals associated with Classic BMW, BMW NA, and BMW US. Only BMW NA and BMW US are parties to this appeal.

[3] BMW NA is "the sole exclusive authorized distributor of BMW vehicles in North America." BMW US, a holding company for BMW owned companies in the United States, is a "member" of BMW NA. On appeal, appellants raise their first and second issues only as to BMW NA. The third issue is raised as to both appellees.

2

negligently undertook to train Homer. Appellants further contend BMW NA is vicariously liable for the acts of Homer due to its agency relationship with Classic BMW. Finally, appellants argue the trial court improperly denied their motion for continuance when appellees failed to produce evidence subject to an order to compel.

## ANALYSIS

### A. Standard of Review

The standards for reviewing a traditional summary judgment are well established. The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In deciding whether a disputed material fact issue exists, precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon*, 690 S.W.2d at 548-49. Further, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.* A motion for summary judgment must expressly present the grounds upon which it is made and must stand or fall on those grounds alone. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 688 (Tex. App.–Dallas 2000, no pet.).

### B. Vicarious Liability

We begin with appellants' second issue in which they argue the principles of respondeat superior apply to the relationship between BMW NA and Classic BMW despite a contractual provision which states Classic BMW is an independent contractor. Appellants contend the record contains sufficient evidence that BMW NA is vicariously liable for the actions of Classic BMW and Homer, specifically that there is sufficient evidence to raise a fact issue as to: (1) the negligent

3

training and supervision claims against BMW NA vicariously through Classic BMW; (2) the negligent entrustment claims against BMW NA vicariously through Classic BMW; and (3) the negligence per se claims against BMW NA vicariously through Homer.

Under the doctrine of respondeat superior, an employer may be vicariously liable for the negligence of its agent or employee who was acting within the scope of employment even though the employer did not personally commit a wrong. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541-42 (Tex. 2002). But a person or entity that hires an independent contractor is generally not vicariously liable for the tort or negligence of that person. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). The right of control is the "supreme test" for determining whether a master-servant relationship exists. *See Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290 (Tex. 1996). In determining whether a worker is an employee or independent contractor, the focus is on who had the right to control the details of the work. *See Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993). An independent contractor is one who, in pursuit of an independent business, undertakes specific work for another using his or her own means and methods without submitting to the control of the other person as to the details of the work. *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 911 (Tex. App.–Fort Worth 2009, pet. denied).

We may consider several factors in determining the extent of the right of control: (1) the independent nature of the person's business; (2) the person's obligation to furnish necessary tools, supplies, and material to perform the job; (3) the right to control progress of the work, except as to final results; (4) the time for which the person is employed; and (5) the method of payment, whether by time or by the job. *See Tex. A&M Univ. v. Bishop*, 156 S.W.3d 580, 584-85 (Tex. 2005). However, to trigger vicarious liability, the right to control must extend to the specific

4

activity from which the injury arose. *Exxon*, 867 S.W.2d at 23; *Farlow*, 284 S.W.3d at 911-12; *Ely v. Gen. Motors Corp.*, 927 S.W.2d 774, 778 (Tex. App.–Texarkana 1996, writ denied).

A contract expressly providing that a person is an independent contractor is determinative of the relationship absent evidence that the contract is a mere sham or subterfuge designed to conceal the true legal status of the parties or that the contract has been modified by a subsequent agreement between the parties. *See Bell v. VPSI, Inc.*, 205 S.W.3d 706, 713 (Tex. App.–Fort Worth 2006, no pet.); *Id.* (citing *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 588-90 (Tex. 1964)). Evidence that the parties did not intend for an independent contractor relationship can come from the contract itself or from extrinsic evidence. *See Farlow*, 284 S.W.3d at 911.

The right to control is ordinarily a question of fact, but whether a contract gives a right to control is generally a question of law. *See id.* at 912. The affidavit of Smerek establishes the Center Agreement, an agreement between BMW NA and Classic BMW, was in effect at the time of the accident. The Center agreement states Classic BMW "is not an agent of BMW NA" and that Classic BMW "will conduct its BMW Vehicle Operations on its own behalf and for its own account." In spite of these statements that no agency relationship existed between BMW NA and Classic BMW, appellants contend "the remainder of the terms of the Center Agreement indicate otherwise." *See Farlow*, 284 S.W.3d at 911 (despite language describing the relationship as an independent contractor relationship, other contract language can evidence such a right of control that the relationship is actually that of employer/employee). Specifically, appellants argue the Center Agreement gave BMW NA the right to control Classic BMW and its employees by requiring Classic BMW to:

●Maintain customary business hours and, when necessary, extended hours;

●Give BMW NA the right to approve signs and pylons as it shall reasonably require;

5

●Make certain its name complied with BMW NA's policies;

●Ensure its website and domain name complied with BMW NA's policies;

●Adhere to certain standards with regard to certified pre-owned BMWs;

●Ensure its advertisements complied with certain standards;

●Train their personnel and to use training materials that may be suggested by BMW NA;

●Comply with the terms and conditions of the Center Agreement and all existing and subsequently developed or amended policies, procedures, programs, and guidelines;

●Have available the most current model BMW vehicles;

●Create an annual strategic business plan;

●Deliver to purchasers of BMW vehicles an itemized invoice and disclosure;

●Maintain accurate and current books of account and regularly provide them to BMW NA;

●Use computer systems compatible with those of BMW NA;

●Allow BMW NA the right to inspect certain records and accounts;

●Maintain a minimum inventory requirement;

●Obtain the consent of BMW NA prior to selling Classic BMW;

●Maintain its operations only at authorized locations; and

●Give BMW NA the right to terminate the Center Agreement.

A similar argument was made by the appellant in the *Ely* case. *See Ely*, 927 S.W.2d at 778. In that case, Ely contended the contract provisions demonstrated control by General Motors such as to create a fact question for the jury. *Id.* There, General Motors offered summary judgment evidence that it had no right to control the test drive; it did not hire him; it did not compensate him; it did not direct the physical details of his warranty repair work; and it did not have actual control

6

over his test drive. *Id.* The court determined Ely presented no summary judgment evidence that General Motors had the right to control the act resulting in the wrongful death, namely the test drive. *Id.* at 778-79. The *Ely* court concluded, "Because General Motors has established an absence of [an] essential element of Ely's vicarious liability cause of action based on an agency relationship. . . General Motors was entitled to summary judgment on this issue." *Id.* at 779.

Here, like in the *Ely* decision, the "activity" causing appellants' injuries was the test drive. *See Ely*, 927 S.W.2d at 778-79. *See also* Victoria *Electric Cooperative, Inc. v. Williams*, 100 S.W.3d 323, 327 (Tex. App.–San Antonio 2002, pet. denied). As we have already noted, to trigger vicarious liability, the right to control must extend to the specific activity from which the injury arose. *Exxon*, 867 S.W.2d at 23; *Farlow*, 284 S.W.3d at 911-12; *Ely*, 927 S.W.2d at 778. The referenced sections of the Center Agreement, however, provide no evidence of BMW NA's control of the test drive. Having determined the Center Agreement did not provide an agency relationship, we turn to appellants' argument that extrinsic evidence demonstrates BMW NA's agency relationship with Classic BMW and Homer. *See Farlow*, 284 S.W.3d at 911 (evidence parties did not intend an independent contractor relationship can come from extrinsic evidence).

In their brief, appellants assert that "[i]t is undisputed that [BMW NA] required salesmen like Homer to submit to its training and that it controlled how many of [Classic BMW's] salesmen were trained in particular areas or subjects." However, merely making recommendations is no evidence of a right of control. *See Shell Oil Co. v. Khan*, 138 S.W.3d 288, 294 (Tex. 2004). Furthermore, although BMW NA required Classic BMW to train its salespeople, the evidence, similar to that in the *Ely* case, establishes BMW NA was not responsible for hiring, training, and supervising Homer. *See Ely*, 927 S.W.2d at 778. Rather, Classic BMW's management team was responsible. In addition, the evidence before us shows BMW NA was not involved in the test

7

drive, the injury-producing event. *See Victoria Electric Co.*, 100 S.W.3d at 327.

Still, in an effort to demonstrate BMW NA's control, appellants refer us to evidence that BMW NA representatives would visit Classic BMW, select a topic for the visits, and then require Classic BMW's employees to sit down with him and evaluate its performance with relation to that topic. Our review of the record shows Smerek testified that examples of such topics included: customer satisfaction, sales, market share, service, service sales, warranty, warranty indexes, parts sales, and wholesale parts sales. Appellants also argue control was asserted through these visits when the representative reviewed Classic BMW's records to ensure it was in compliance with BMW NA's requirements under the Center Agreement. However, again, the evidence cited by appellants fails to establish BMW NA's control related to the injury-producing activity itself. *See id.*

Rather, the evidence shows that: (1) Classic BMW is an independently owned dealership that is not and has never been owned by BMW NA and (2) BMW NA did not play any role in the hiring of Homer, in training Homer on how to conduct test drives, or in supervising Homer's activities at Classic BMW. Thus, appellants have provided no summary judgment evidence that BMW NA had the right to control Homer or Classic BMW during the act resulting in appellants' injuries, namely the test drive. See *Exxon*, 867 S.W.2d at 23; *Farlow*, 284 S.W.3d at 911-12; *Ely*, 927 S.W.2d at 778. Because BMW NA has established the absence of an essential element of appellants' vicarious liability cause of action based on an agency relationship, BMW NA was entitled to summary judgment. *See Ely*, 927 S.W.2d at 779. We overrule appellants' second issue.

C.      *Negligent Undertaking*

In their first issue, appellants contend the record contains sufficient evidence to raise a fact

issue as to negligent undertaking by BMW NA. Specifically, appellants argue because BMW NA undertook to train Homer on how to conduct demonstration drives, BMW NA is liable.

To sustain their negligence claim, appellants were required to establish that BMW NA violated a legal duty owed to them. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). Whether such a duty exists is a question of law for the court to decide based on the facts surrounding the occurrence in question. *See Abdel-Fattah v. Pepsico, Inc.*, 948 S.W.2d 381, 383 (Tex. App.–Houston [14th Dist.] 1997, no pet.). Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances. *See SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995). However, one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby. *See Fort Bend County Drainage Dist. v. Sbrush*, 818 S.W.2d 392, 395-96 (Tex. 1991) (citing *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119 (Tex. 1976)). Still, a person's duty to exercise reasonable care in performing a voluntarily assumed undertaking is limited to that undertaking alone. *See Sbrush*, 818 S.W.2d at 397.

Appellants contend BMW NA assumed a duty toward them under the Restatement (Second) of Torts §324A:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if (a) his failure to exercise reasonable care increases the risk of harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered

9

because of reliance of the other or the third person upon the undertaking.

*See Seay v. Travelers Idem. Co.*, 730 S.W.2d 774, 776-77 (Tex. App.–Dallas 1987, no writ).

We first consider appellants' allegation that BMW NA satisfied the requirements of subpart (a) by increasing the risk of harm to appellants. Appellants contend BMW NA undertook to train Homer on how to conduct demonstration drives, but failed to exercise reasonable care in that undertaking, thereby increasing the risk of harm to appellants. In particular, appellants allege "BMW taught and encouraged aggressive driving techniques designed to demonstrate the 3 Series' power and engage its safety features–all while continually directing Homer and the participants to incorporate what they learned into their sales processes and demonstration drives."[4]

However, Jeff Smerek, area manager of BMW NA, stated in his affidavit as follows:

> BMW NA does not dictate the manner in which demonstration drives to prospective customers should be conducted by dealers. BMW NA does not have any requirements for its dealers to conduct test drives in any particular manner. BMW NA does not control the details of test drives conducted by its dealers, nor does BMW NA tell dealers what requirements the dealers should have for test drives. . . . Dealers are responsible for the conduct of their sales associates on test drives and BMW NA did not have any program in place to monitor the manner in which sales associates conducted test drives. . . . [T]he sales associate determines the details of the test drive and sales presentation made to the customer. The dealer is responsible for monitoring the sales associate.

Smerek further testified, through his deposition, that BMW NA does not provide any tips and suggestions for test drives.[5]

In addition, Homer testified he did not receive any training "about how to conduct the test drive." With respect to the test drive in question, Homer testified he established the route of the test drive and was free to establish the length of the test drive within a reasonable limit of time. He also agreed that "in practice, [he] decided what to do on the test drive."

---

[4] Homer attended an April 2005 Ride and Drive event, approximately three months prior to the accident at issue.

[5] During the deposition, the terms "test drives" and "demonstration drives" were used interchangeably.

J.T. Bryant, Homer's supervisor at Classic BMW, confirmed Classic BMW's management team was responsible for hiring, training, and supervising Homer. In his deposition, Homer testified Classic had a racing team and, with the approval of Classic, Homer attended racing school in August 2004 to become qualified as a race car driver. Homer was hired to be the team's driver. Bryant testified he was concerned that Homer's participation on the racing team made Homer a more aggressive driver.

Bryant also explained that the Ride and Drive events did not show people how to demonstrate the vehicle but showed "the features of the car and what it would do." Bryant affirmed that BMW NA was not involved in the test drives, and testified as follows:

Q: So they–did BMW, to your knowledge, ever show the salespeople how to perform an actual test drive?

A: No, not with the customer.

...

Q: Did BMW ever work with Classic to make sure there was a procedure to teach the salespeople how to perform actual test drives?

A: No.

Appellants, on the other hand, contend the evidence raises a fact issue concerning whether BMW NA trained Homer on how to conduct demonstration drives and cites this Court to 38 excerpts from BMW Ride and Drive Event training materials ("Materials"). We conclude the Materials, taken as a whole, fail to demonstrate BMW NA negligently undertook to train Homer.

In their motion for reconsideration, appellants list the following excerpts from the Materials as evidence BMW NA would "explicitly tell participants how to conduct test drives":

●Learning Objectives. . . . Participants will learn how to: Incorporate key 3 Series characteristics into demonstration drives and test-drives.

●Walkaround Script (Product Specialist): 3 ½ minutes. . . . You'll also learn how

11

you'll be able to create great product demonstrations around these benefit categories [Power and Performance, Safety and Security, Comfort and Convenience, and Cost of Ownership] and conduct memorable demonstration drives.

● Learning Objectives. . . . Participants also learn by actual experience that Active Steering's Yawing Moment Control feature of can [sic] correct the E90's path when braking on split traction surfaces. Participants determine how they can demonstrate and communicate these key 3 Series Safety and Security features in their presentations and demonstration drives.

● Learning Objectives. . . . Participants determine how they can fit their experiences [assessing the differences between the 325i, Audi A4 2.0T and Mercedes-Benz C230 Kompressor] into sales demonstration drives and service test drives.

● How to demonstrate: On the showroom floor, show how to set the [cruise control] system and activate it during the test drive.

● Learning Objectives. . . . Participants determine how they can fit their experiences [assessing the differences between the 330i, the Infiniti G35 and the Acura TL] into sales demonstration drives.

● Explain (Professional Driver): . . . So our challenge to you is to take the information you've gathered here [testing your product against its main competition "in a high-performance 'laboratory' setting] in our "lab" and use it on your demonstration drives.

● Objectives. . . . Participants also leave the event knowing how to incorporate 3 Series technology and benefit explanations (and demonstrations) into vehicle presentations, demonstrations drives and deliveries.

In their response to BMW NA and BMW US's motion for summary judgment, appellants categorize the Materials as "largely scripts and outlines for the 'Facilitators' and 'Professional Drivers' to follow while instructing the dealer salespeople." However, we have not been cited to any evidence that Homer was a "Facilitator" or a "Professional Driver" who would have been provided all or part of the Materials. There is no evidence the Materials were provided to Homer at all, much less as a "How-To Guide" on how to conduct a test drive with prospective customers. Although there is evidence Homer attended a Ride and Drive event to which the Materials "relate," there is no evidence the relationship between the Materials and Homer's participation in the event

caused the accident in question.

In addition, we note the excerpts cited by appellants are only a small part of hundreds of pages of Materials that had been provided to the Facilitators and/or Professional Drivers. We have again reviewed the Materials and conclude, as a whole, they show the Ride and Drive events were conducted in a controlled environment where safety was emphasized:

●Specifically, these two independent drives will include a first impression drive around a coned course with a slalom. . . and a drive on a split traction surface where the Active Steering feature and Yawing Moment Control engages . . . Before the groups split, the Professional Driver discusses and re-emphasizes the safety measures to adhere to while on the tracks, then dismisses the participants to their first assigned location.

●The Professional Driver provides a detailed description of the course (with visual support) so participants have an idea of what is in store. He/She discusses and re-emphasizes the safety measures to adhere to while on the track.

●The Professional Driver discusses and re-emphasizes the safety measures to adhere to while in the vehicle, participants receive helmets and are assigned to a vehicle.

●Driving Assistants "stage" participants in waiting vehicles as the Professional Drivers take participants around the track. The Driving Assistants ensure that helmets and safety belts are used.

●We want you to have fun out there, but please conduct yourselves in a safe manner at all times.

●Any recklessness will result in the loss of your driving privileges for the rest of the day.

●I do need to emphasize that anyone who chooses not to listen or drives recklessly will be pulled off the course and not permitted to continue.

●In addition to lost driving privileges, your dealership will be notified of your reckless driving.[6]

In light of these statements and the record as a whole, we conclude the Materials do not provide

---

[6] These are only a sampling of the many instances in which the Materials indicate the Ride and Drive events are conducted in a controlled environment where safety is emphasized.

13

evidence BMW NA increased the risk of harm to appellants.

Appellants next refer us to the testimony of Homer, indicating he believed BMW's training was intended to show him how BMW believed a salesman should demonstrate its cars to customers. Our review of the record shows Homer agreed "this is what *they* undertook in terms of their training to show [me] how they thought the try–the car could be demonstrated." (emphasis added). The cited reference; however, is only one page from a series of non-contiguous excerpts from the deposition of Homer. Therefore, we are unable to ascertain from the context whether *they*, as used in the quoted portion, refers to BMW NA, Classic BMW, or another entity. Reviewing all evidence in favor of the non-movant, we conclude Homer's statement does not raise a genuine issue of material fact as to whether BMW NA increased the risk of harm to appellants. *See Nixon*, 690 S.W.2d at 548.

We also consider appellants' argument BMW NA increased the risk of harm to them by training Homer and supplying him with aggressive techniques that BMW represented as proven successful by other salesmen during demonstration drives. However, in the referenced portion of Smerek's deposition, Smerek explained the tips for test drives "don't come from BMW of North America," but from the participants themselves and the salesmen "can incorporate them in their test drives or they can not incorporate them in their test drives, if they offer test drives." Therefore, based on the evidence before us, we conclude the trial court properly determined there was not a fact question as to whether BMW NA increased the risk of harm to appellants. *See* Tex. R. Civ. P. 166a(c).

We next consider appellants' argument that BMW NA fulfilled the requirement of subpart (b) of the Restatement by performing a duty owed by Classic BMW to appellants. Appellants contend BMW NA trained its dealerships' salespeople regarding how to conduct successful

14

demonstration drives. Therefore, appellants conclude the evidence raises a fact issue regarding whether BMW NA undertook to perform a duty owed by Classic BMW.

An employer has a duty to adequately hire, train, and supervise employees. *See Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 660 (Tex. App.–Dallas 2005, pet. denied). Thus, Classic BMW had a duty to train and supervise its employees, including Homer. J.T. Bryant, Homer's supervisor, confirmed Classic BMW's management team was responsible for hiring, training, and supervising Homer. Furthermore, Smerek testified as follows:

> Classic is an independently owned dealership that is not and has never been owned by BMW NA. Classic is an independent business with its own management. BMW NA does not play any role in the hiring of employees by Classic. Classic is responsible for the hiring, retention and supervision of its own employees. . . . Christopher Homer was not employed by BMW NA. BMW NA did not play any role in the hiring of Homer, in training Homer on how to conduct test drives, in supervising Homer's activities at Classic, or Homer's eventual dismissal after the accident.

Therefore, we conclude the trial court properly found there was no question of fact regarding whether BMW NA undertook to perform a duty owed by Classic BMW to appellants. *See* Tex. R. Civ. P. 166a(c).

Finally, we turn to appellants' argument that the requirement of subpart (c) of the Restatement was fulfilled because appellants relied on BMW NA's undertaking to train Homer. As we have already noted; however, BMW NA did not undertake to perform a duty owed by Classic BMW to appellants. Thus, there can be no reliance by appellants on the alleged undertaking. *See Steward v. Costello*, No. 05-02-00679-CV, 2003 WL 115453, at *2 (Tex. App.–Dallas Jan. 14, 2003, no pet.) (mem. op.) (not designated for publication) (party assumed a duty to third parties to ensure pipe was properly loaded, secured, and flagged); *Seay*, 730 S.W.2d at 778-80 (Travelers undertook inspection of insured's boilers and court found reliance). Therefore, we conclude the trial court properly found no fact issue with regard to appellants'

reliance. *See* Tex. R. Civ. P. 166a(c). We overrule appellants' first issue.

### D. *Motion for Continuance*

In their third issue, appellants contend the trial court abused its discretion by denying their renewed motion for continuance because BMW NA and BMW US failed to produce a considerable amount of evidence that the trial court ordered compelled and, thus, erred in granting summary judgment in their favor. As a part of their response to BMW NA and BMW US's motions for summary judgment, appellants asked the trial court "to consider granting a short continuance in the event that it believes there is any lack of evidence for [appellants'] claims, particularly against BMW US."

We review a trial court's decision whether to grant a party additional time for discovery before a summary judgment hearing for an abuse of discretion. *Cooper v. Circle Ten Council Boy Scouts of Am.*, 254 S.W.3d 689, 696 (Tex. App.–Dallas 2008, no pet.) (citing *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996)). A party contending he has not had an adequate opportunity for discovery before a summary judgment hearing must file either an affidavit explaining his need for additional discovery or a verified motion for continuance. *See* TEX. R. CIV. P. 166a(g). In considering whether the trial court abused its discretion, we consider such factors as the length of time the case had been on file before the hearing, the materiality of the discovery sought, whether the party seeking the continuance exercised due diligence in obtaining the discovery, and what the party expects to prove. *Cooper*, 254 S.W.3d at 696.

Appellants filed their original petition on June 18, 2007. On March 17, 2008, the trial court issued an order on appellant's motion to compel discovery from BMW NA and BMW US, primarily granting appellants' requests. The record reflects the parties continued to engage in discovery following the trial court's order on appellant's motion to compel.

16

Over 19 months after the filing of the original petition, BMW NA and BMW US filed their motions for summary judgment on January 27, 2009. On March 6, 2009, appellants filed their verified motion for continuance as a part of their response to BMW NA and BMW US's motions for summary judgment. The summary judgment hearing took place on March 13, 2009, 45 days after the motions were filed. Generally, it is not an abuse of discretion to deny a motion for continuance when the party has received the 21 days' notice required by rule 166a(c). *See id.* at 697.

Furthermore, appellants provided no information in their motion regarding diligence on their part in attempting to obtain another BMW NA representative for deposition or the additional documents. *See Lee v. Haynes & Boone, L.L.P.*, 129 S.W.3d 192, 198 (Tex. App.–Dallas 2004, pet. denied). Under these circumstances, we cannot conclude the trial court abused its discretion by denying appellants' motion for continuance. *See Cooper*, 254 S.W.3d at 696-97; *Lee*, 129 S.W.3d at 198; *Carter v. MacFadyen*, 93 S.W.3d 307, 310-11 (Tex. App.–Houston [14th Dist.] 2002, pet. denied). We overrule appellant's third issue.

## CONCLUSION

We overrule appellants' motion for en banc reconsideration. Having overruled appellants' three issues on appeal, we affirm the judgment of the trial court.

/David L. Bridges/
_____
DAVID L. BRIDGES
JUSTICE

100724F.P05

17



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SCOTT POYNOR AND KIMBERLY YVONNE MILES POYNOR, INDIVIDUALLY AND AS NEXT FRIEND OF SPENSER ALEXIS MILES, A MINOR, Appellants

No. 05-10-00724-CV      V.

BMW OF NORTH AMERICA, LLC AND BMW (US) HOLDING CORP., Appellees

Appeal from the 116th Judicial District Court of Dallas County, Texas. (Tr.Ct.No. 07-05727-F).
Opinion delivered by Justice Bridges, Justices FitzGerald and Lang.

We vacate our judgment of July 31, 2012. This is now the judgment of the Court.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. It is **ORDERED** that appellees BMW of North America, LLC and BMW (US) Holding Corp. recover their costs of this appeal from appellants Scott Poynor and Kimberly Yvonee Miles Poynor, Individually and as Next Friend of Spenser Alexis Miles, a Minor.

Judgment entered February 21, 2013.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

18